UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-7661-GW(GJSx) | Date | December 3, 2018 |
|---|---|---|---|
| Title | *Kindred Studio Illustration and Design, LLC v. Electronic Communication Technology, LLC* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Katie Thibodeaux | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Rachael D. Lamkin | Jean G. Vidal Font | |

**PROCEEDINGS:**  DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S DECLARATORY JUDGMENT COMPLAINT [22];

SCHEDULING CONFERENCE

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court would GRANT Defendant's Motion to Dismiss Plaintiff's Declaratory Judgment Complaint. The Court would dismiss Counts 1-5 without prejudice. Plaintiff will have until December 24, 2018 to file a First Amended Complaint. Counsel will attempt to stipulate as to the basis for the dismissal to be with prejudice.

The scheduling conference is continued to January 10, 2019 at 8:30 a.m., with a joint report to be filed by noon on January 3, 2019.

                                                                                              :     13

                                                                  Initials of Preparer    JG

***Kindred Studio Illustration and Design, LLC v. Electronic Comm. Tech., LLC***; Case No. CV-18-07661-GW-(GJSx); Tentative Ruling on Defendant's Motion to Dismiss Plaintiff's Declaratory Judgment Complaint

I. **Background**

    A. *Procedural Background*

On August 10, 2018, Electronic Communication Technology, LLC ("Defendant" or "ECT") sent an enforcement letter to Kindred Studio Illustration and Design, LLC, d/b/a True Grit ("Plaintiff" or "True Grit"). In the letter, Defendant accused Plaintiff of infringing its U.S. Patent No. 9,373,261 ("the '261 Patent"). Compl., Ex. B, Docket. No. 1-3. In response, Plaintiff filed a Declaratory Judgment Complaint on August 31, 2018 and sued Defendant for: (1) declaratory judgment of invalidity of the '261 Patent, (2) declaratory judgment of non-infringement of the '261 Patent, (3) declaratory judgment of inequitable conduct, (4) unlawful competition under the "unlawful" prong of California Business & Professions Code § 17200 ("UCL"), and (5) unfair competition under the "unfair" prong of the UCL. Complaint ("Compl.") ¶¶ 71-93, Docket No. 1. On October 22, 2018, Defendant provided Plaintiff with an executed Covenant Not To Sue ("CNS") for all the patents owned by Defendant, including the '261 Patent. Mot., Ex. 1, Docket No. 21-2.

Now, Defendant moves to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and for failure to state a claim. *See* Defendant's Motion to Dismiss Plaintiff's Declaratory Judgment Complaint ("Mot."), Docket No. 21. Plaintiff filed an opposition to the Motion. *See* Plaintiff's Opposition to Defendant's Motion to Dismiss ("Opp."), Docket No. 25. Defendant filed a reply in support of the Motion. *See* Reply Brief to Plaintiff's Opposition to Defendant's Motion to Dismiss ("Reply"), Docket No. 26.

    B. *Factual Background*

In the Complaint, Plaintiff alleges the following:

Plaintiff, a California corporation with its principal place of business in Los Angeles, California, "markets <u>downloadable</u> tools and assets for use by commercial graphic designers and illustrators including digital paintbrushes, stock images, software shortcuts and tutorials." Compl. ¶¶ 2, 9 (emphasis in original). Plaintiff's "products allow customers (other designers) to add effects and aesthetics to their designs and physical end-products that would be otherwise

1

unachievable, commercially unviable, or require years of experience and know-how to develop in isolation." *Id.* ¶ 10.

Defendant, a Florida corporation, owns the '261 Patent titled "Secure Notification Messaging with User Option to Communicate with Delivery or Pickup Representative," that issued on June 21, 2016. *See id.* ¶ 3; '261 Patent. The '261 Patent "generally relates to data communications, information, and messaging systems and, more particularly, to systems and methods that notify a party of travel status associated with one or more mobile things." *Id.* at 1.

On August 10, 2018, Defendant sent an enforcement letter accusing Plaintiff of infringing the '261 Patent and asked for a negotiable "paid-up one-time license" of $15,000. Compl., Ex. B. The enforcement letter gave Plaintiff the option of entering into a licensing agreement or submitting evidence of non-infringement of the '261 Patent. *Id.*

> We expect that, upon review, you will acknowledge that TrueGritTextureSupply practices the inventions disclosed in the ECT Patent and will enter into licensing discussions. In the event TrueGritTextureSupply.com concludes that it does not desire a license for the ECT Patent, we expect to receive from you within fourteen (14) days responsive claim charts showing why TrueGritTextureSupply.com does not infringe the ECT Patent, along with copies of the system documentation, manuals and any other materials that describe the components and functionality of the TrueGritTextureSupply.com system, including those materials you reviewed in the course of your investigation.
>
> ECT's proposed license fee, of course, is subject to early discussions and good faith communications toward a patent license. If litigation is required to enforce ECT's rights, the upfront license offer is obviously removed.

Compl., Ex. B.

In response to the enforcement letter, Plaintiff filed a Complaint on August 31, 2018. *See generally* Compl. It claimed that Defendant knows that its '261 patent is invalid because the claims of three other patents in the same family sharing the same specification have been invalidated under Section 101. Compl. ¶ 56. Additionally, Plaintiff is aware of at least sixteen other parties that have recently received cease and desist letters from Defendant. *See* Declaration of Rachel Lamkin ("Lamkin Decl."), Docket No. 25-1; *see id.* Ex. 1, Docket No. 25-2.

## II. Legal Standard

### A. *Rule 12(b)(1)*

A party may contest subject matter jurisdiction pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), the

moving party may either attack the pleadings on their face or present extrinsic evidence for the district court's consideration. *Kohler v. CJP, Ltd.*, 818 F. Supp. 2d 1169, 1172 (C.D. Cal. 2011) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (noting that Rule 12(b)(1) jurisdictional attacks "can be either facial or factual")). A district court must determine whether an attack is facial or factual, as this determination governs the scope of the court's review. *See Kohler*, 818 F. Supp. 2d at 1172. When deciding a Rule 12(b)(1) motion that attacks the complaint on its face, a court "must accept the allegations of the complaint as true." *Id.* (citing *Valdez v. United States*, 837 F. Supp. 1065, 1067 (E.D. Cal. 1993), *aff'd*, 56 F.3d 1177 (9th Cir. 1995)). But in deciding a Rule 12(b)(1) motion that raises a factual attack, courts "may weigh the evidence presented, and determine the facts in order to evaluate whether they have power to hear the case." *Id.* (citing *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987)); *see also White*, 227 F.3d at 1242 (when a motion relies on extrinsic evidence, a court "need not presume the truthfulness of the plaintiffs' allegations").

If a party seeks to dismiss a declaratory judgment claim on the ground that no true case or controversy exists, the action is properly brought under Rule 12(b)(1). *Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007). "A case becomes moot – and therefore no longer a 'Case' or 'Controversy' for purposes of Article III – 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *ArcelorMittal v. AK Steel Corp.*, 856 F.3d 1365, 1370 (Fed. Cir. 2017) (citations omitted). Under the Declaratory Judgment Act, "a covenant not to sue can deprive the Court of subject matter jurisdiction." *Fulton v. Genea Energy Partners*, CV-12-1506-DOC-(MLGx), 2014 WL 12597588 at *2 (C.D. Cal. 2014). When determining whether a covenant not to sue moots a case or controversy, the voluntary cessation doctrine applies. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 92 (2013). The relevant inquiry under the doctrine is: "[c]ould the allegedly wrongful behavior reasonably be expected to recur?" *Id.* "Whether a covenant not to sue will in fact divest [the] Court of jurisdiction 'depends on what is covered by the covenant.'" *Fulton*, 2014 WL 12597588 at *2 (citing *Revolution Eyeware Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009)). In proving that a covenant not to sue has mooted a case or controversy, the "defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already*, 568 U.S. at 91 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

### B. *Rule 12(b)(6)*

Under Rule 12(b)(6), a complaint is deficient and warrants dismissal when it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may fail to state a claim for one of two reasons: (1) lack of a cognizable legal theory or (2) failure to allege sufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In determining whether a complaint survives this test, courts "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In so doing, courts must accept the complaint's factual allegations as true, and construe them in the light most favorable to the plaintiff. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). But a court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009), or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Where a plaintiff facing a 12(b)(6) motion has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied. *Iqbal*, 556 U.S. at 678; *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013). But "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quotations omitted).

### III. <u>Analysis</u>

#### A. *The Court Dismisses Counts 1 Through 3 for Declaratory Judgment*

In the Complaint, Plaintiff's first three causes of action seek declaratory judgment. *See generally* Compl. More specifically, it alleges: (1) declaratory judgment of invalidity of the '261 Patent, (2) declaratory judgment of non-infringement of the '261 Patent, and (3) declaratory judgment of inequitable conduct. *See* Compl. ¶¶ 71-76. Defendant moves to dismiss each of those claims, primarily arguing that a case or controversy no longer exists as to those claims due to the executed CNS.[1] *See* Mot. at 11. Plaintiff counters that the CNS "is not sufficiently broad

---

[1] The CNS states that Defendant "will never institute any action or lawsuit at law or in equity against Covenantee" for all of Defendant's patents, including the '261 Patent. Mot., Ex. 1. To support its arguments, Defendant relies primarily on *Already, LLC v. Nike*. Defendant asserts that, like the counterclaims in *Already*, Plaintiff's Counts 1-3 should be rendered moot as "the allegedly wrongful behavior could [not] reasonably be

to trigger the mootness and voluntary cessation doctrines" and fails to divest the Court's jurisdiction. Opp. at 3-4.

Touched on in the legal standard section above, the Declaratory Judgment Act ("DJA") provides that, in "a case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Generally, the DJA exists "to afford an added remedy to one who is uncertain of his rights and who desires an early adjudication thereof without having to wait until his adversary should decide to bring suit, and to act at his peril in the interim." *McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 342 (9th Cir. 1966); *Shell Oil Co. v. Frusetta*, 290 F.2d 689, 692 (9th Cir. 1961). Although the DJA expands available remedies, it does not undermine the Constitution's minimum jurisdictional requirements. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) ("[The DJA] enlarged the range of remedies available in the federal courts but did not extend their jurisdiction"). For DJA claims, satisfying these minimum requirements means showing that, under all the circumstances, there exists an "actual controversy" between parties with adverse legal interests of sufficient immediacy, and that declaratory relief will fully resolve the controversy presented. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998); *United States Nat'l Bank v. Independent Ins. Agents of Am.*, 508 U.S. 439, 446 (1993); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937).

Under the DJA, "a covenant not to sue can deprive the Court of subject matter jurisdiction." *Fulton,* 2014 WL 12597588 at *2. When determining whether a covenant not to sue moots a case or controversy, the voluntary cessation doctrine applies. *Already,* 568 U.S at 92. The relevant inquiry under the doctrine is: "[c]ould the allegedly wrongful behavior reasonably be expected to recur?" *Id.* "Whether a covenant not to sue will in fact divest [the] Court of jurisdiction 'depends on what is covered by the covenant.'" *Fulton*, 2014 WL 12597588 at *2 (citations omitted). In proving that a covenant not to sue has mooted the case or controversy, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already*, 568 U.S. at 91 (citations omitted).

---

expected to recur." Mot. at 14 (citing *Already,* 568 U.S. at 92 ). Defendant further argues that "[a] cursory review of [Defendant's] Covenant Not To Sue reveals that its scope is similar to the one in *Already, LLC¸* which . . . the Supreme Court deemed sufficient to render that case moot." *Id.* at 16.

As per the above authority, the inquiry begins with the text of the CNS. The CNS provides as follows:

> Covenantors will never institute any action or lawsuit at law or in equity against Covenantee, nor institute, prosecute, make allegations of, or in any way aid in the institution or prosecution of any claims, demands, actions, or causes of action for damages, reasonable royalties, lost profits, costs, expenses or compensation, whether past, present or future for or on account of any damages, losses, injuries either to person or property, or both, whether developed or undeveloped, resulting or to result, unknown or known, past, present or future, arising out of or relating in any way to any claims of patent infringement of any of the patents listed in **Schedule A** attached hereto, including all corresponding provisional, continuation, continuation-in-part, divisional, reissue, and reexamination applications pertaining to said patents .

Mot., Ex. 1.

Comparing the CNS to covenants found sufficient to moot a case or controversy is instructive. Relevant to this inquiry is *Already*, which both Plaintiff and Defendant cite at length and the Court cited above.[2] In *Already*, Nike alleged that Already's athletic footwear infringed Nike's trademark. *Already*, 568 U.S. at 88. Already denied that it infringed Nike's trademark and filed a counterclaim that the trademark was invalid. *Id.* Four months after Already filed its counterclaim, Nike issued a covenant not to sue and brought a motion to dismiss its claims and Already's counterclaim without prejudice. *Id.* at 88-89. The district court dismissed Already's counterclaim holding that there was no longer "a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 89-90 (citations omitted). The Second Circuit affirmed. *Id.* at 90. After reviewing whether Nike's covenant to

---

[2] While Plaintiff agrees that *Already* governs, it argues that "[Defendant] has not met its formidable burden as its proffered CNS is not sufficiently broad to trigger the mootness and voluntary cessation doctrines cited in *Already*." Opp. at 3. Plaintiff's arguments focus on distinguishing the CNS from the covenant not to sue in *Already*. *Id.* at 3-4. Plaintiff asserts that Defendant's reliance on *Already* is inappropriate as "the CNS in *[Already]* was uncontested." *Id.* at 3. Next, Plaintiff argues that, unlike the CNS, the covenant not to sue in *Already* was "unconditional and irrevocable," and "extended to customers and distributors." *Id.* at 4. Plaintiff further argues that, under the language of the CNS, "[Defendant] is now able to sue [Plaintiff's] customers; employees; online distributors; and platforms (e.g., Shopify). Further, [Defendant] can revoke the CNS at any point." *Id.* (parenthetical numbering omitted).
Defendant disagrees with Plaintiff's characterization of the CNS. Responding to Plaintiff's concerns, Defendant states that "[t]he CNS covers [Plaintiff] as Covenantee and; therefore, by extension, also covers [Plaintiff's] employees," and "the CNS covers any possible cause of action arising out of [Defendant's] patents." Reply at 8. Defendant further asserts that, while the CNS does not mention Plaintiff's customers, distributors, or platforms, "the claimed steps of the '216[sic] Patent–which recite a method for an automated notification system–are not performed by entities such as [Plaintiff's] customers or distributors; and therefore, they cannot be sued for infringement of the '261 Patent." *Id.* The Court will address these points after preliminarily discussing *Already* and other relevant case law.

sue could moot the case, the Supreme Court affirmed the Second Circuit, holding that "[t]he uncontested findings made by the District Court, and confirmed by the Second Circuit, make it 'absolutely clear' this case is moot." *Id.* at 102.

Although Plaintiff contends that the covenant not to sue in *Already* was "uncontested," the Court still analyzed the terms of the covenant under the voluntary cessation doctrine. *Already*, 568 U.S. at 93. The *Already* covenant read, in relevant part:

> [Nike] unconditionally and irrevocably covenants to refrain from making *any* claim(s) or demand(s) . . . against Already or *any* of its . . . related business entities . . . [including] distributors . . . and employees of such entities and *all* customers . . . on account of any *possible* cause of action based on or involving trademark infringement, unfair competition, or dilution, under state or federal law . . . relating to the NIKE Mark based on the appearance of *any* of Already's current and/or previous footwear product designs, and *any* colorable imitations thereof, regardless of whether that footwear is produced . . . or otherwise used in commerce before or after the Effective Date of this Covenant.

*Already*, 568 U.S. at 93 (emphasis in original).

The Court found Nike's covenant not to sue sufficient under the voluntary cessation test, noting that "[t]he covenant is unconditional and irrevocable. Beyond simply prohibiting Nike from filing suit, it prohibits Nike from making any claim or any demand. It reaches beyond Already to protect Already's distributors and customers. And it covers not just current or previous designs, but any colorable imitations." *Already*, 568 U.S. at 93.

Nearly a year after *Already*, in *Phoenix Modular Elevator*, a district court similarly found that a covenant not to sue mooted the case. *See Phoenix Modular Elevator, Inc. v. T.L. Shield & Assoc.*, CV-14-00339-RGK-(PLAx), 2014 WL 12569344 (C.D. Cal. 2014). There, the court found the terms of the covenant not to sue "sufficiently broad to constitute a relinquishment of the rights originally asserted under the '520 Patent." *Phoenix*, 2014 WL 12569344 at *2. The covenant not to sue in *Phoenix* "expressly and unconditionally agree[d] to not sue Defendants for infringement as to the '520 patent" based on:

> (1) any actions by Defendants on, or before, the date of dismissal of the current lawsuit; (2) Defendants' use, importation, manufacture, development, design, marketing, licensing, distributing, offering for sale, or selling any elevators that Defendants *currently, or in the past*, use, import, manufacture, market, sell, or install; and (3) Defendants' use, importation, manufacture, development, design, marketing, licensing, distributing, offering for sale, or selling any *future* elevators that are *substantially the same* structure as those used, imported, manufactured,

7

> marketed, sold, or installed by Defendants in the past.

*Phoenix*, 2014 WL 12569344 at *2 (emphasis in original).

While the covenants not to sue in *Already* and in *Phoenix* differ from one another in some respects, the effect of both covenants is clear – the covenanting party will not sue, now or in the future, for legal disputes relating to the patented product and "colorable imitations thereof." *Already*, 568 U.S. at 93. The CNS appears to have substantially the same components as the covenants not to sue in *Already* and *Phoenix*. Overall, a reading of the CNS indicates that "the allegedly wrongful behavior could [not] reasonably be expected to recur." *Already*, 568 U.S. at 92. The CNS herein uses broad, unequivocal, and absolutely clear language, providing that "Covenantors will never institute any action or lawsuit at law or in equity against Covenantee, nor institute, prosecute, make allegations of, or in any way aid in the institution or prosecution of any claims, demands, actions, or causes of actions . . . whether past, present, or future . . . whether developed or undeveloped . . . unknown or known, past, present or future, arising out of or relating in any way to any claims of patent infringement of the patents listed in Schedule A." *See* Mot., Ex. 1. The distinctions Plaintiff points out between the CNS and the covenant not to sue in *Already* are inapposite.[3]

Defendant additionally notes that "the fact that [Plaintiff] has not signed [Defendant's] Covenant Not To Sue [is] not sufficient to create an actual case or controversy." Mot. at 17 (citing

---

[3] Plaintiff asserts that the CNS is distinct from the covenant not to sue in *Already* and is not sufficient because it (1) omits the phrase "unconditional and irrevocable," (2) does not extend to employees, customers, online distributors, and platforms, and (3) does not include "any possible cause of action." Opp. at 4. The Court will address these arguments in turn.

First, while omitting the phrase "unconditional and irrevocable," the CNS states that "Covenantors **will never** institute any action or lawsuit." Mot., Exh. 1. Plaintiff fails to explain why the term "never" is not sufficient as compared to the phrase "unconditional and irrevocable." Additionally, Defendant has stated its willingness to include the phrase "unconditional and irrevocable" to the CNS if "[Plaintiff's] unwillingness to accept [Defendant's] CNS hinges on the inclusion of the phrase . . . ." Reply at 7, n1. The Court sees no need to include this phrase in view of the terminology already present in the CNS.

Second, although the covenant not to sue in *Already* specifically carved out Nike's customers, employees and distributors, the covenant not to sue in *Phoenix* did not but was still found to be "sufficiently broad to constitute a relinquishment of the rights." *Phoenix*, 2014 WL 12569344 at *2. There is no set requirement that a covenant not to sue list out all parties associated with the covenantee to be sufficiently broad. Further, as discussed by Defendant, Plaintiff's employees appear covered under Plaintiff as the "covenantee" and it is unclear how Plaintiff's customers, distributors, or platforms would even infringe the '261 Patent. Reply at 8.

Third, the CNS specifically states that "Covenantors will never institute *any actions or lawsuit at law or in equity* against Covenantee nor institute, prosecute, make allegations of, or in any way aid in the institution or prosecution of any claims, demands, actions, or causes of actions . . . relating in any way to any claims of patent infringement of any of the patents listed . . . ." Mot., Exh. 1. This language encompasses "any possible cause of action" as it relates to infringement of Defendant's patents and is found to be sufficiently broad.

8

*Merit Healthcare Int'l, Inc. v. Merit Med. Sys., Inc.*, No. CV-14-4280-FMO-(SHX), 2016 WL 6963052 at *5 (C.D. Cal. 2016), aff'd 721 F. App'x 628 (9th Cir. 2018) ("Because plaintiff has not identified any affirmative act by defendant to demonstrate that a case or controversy exists, defendant's failure to sign a covenant not to sue is insufficient to create an actual controversy under the circumstances of this case."). Plaintiff does not respond to this argument. *See generally* Opp. The Court thus finds a lack of signature, absent any affirmative act, to fall short of creating a case or controversy as required for jurisdiction under Rule 12(b)(1).

After a review of the parties' arguments and the language of the CNS, the Court finds the CNS sufficient to moot the case or controversy as to Plaintiff's Counts 1-3 (pertaining to the invalidity, non-infringement and inequitable conduct of the '261 Patent). Defendant requests that the Court dismiss Counts 1-3 with prejudice and Plaintiff fails to respond to this request. The Court's own review indicates that dismissal with prejudice is likely inappropriate. In general, "a lack of subject matter jurisdiction usually justifies only a dismissal, not a dismissal with prejudice." *Textile Productions, Inc. v. Mead Corp.*, 134 F.3d 1481, 1486 (Fed. Cir. 1998); *see also Siler v. Dillingham Ship Repair*, 288 Fed. App'x 400, 401 (9th Cir. 2008) ("vacat[ing] the district court's judgment to the extent it dismissed the complaint with prejudice . . . because a dismissal for lack of subject matter jurisdiction is not an adjudication on the merits."). The nature of a covenant not sue supports the notion that dismissal with prejudice is an atypical result. For example, "[a] plaintiff's promise not to sue eliminates the controversy between the parties but does not extinguish the plaintiff's underlying rights, unlike a release of liability that would affect the merits." *Out RAGE, LLC v. New Archery Products Corp.*, 12-cv-122-bbc, 2013 WL 12234188 at *10 (W.D. Wis. 2013) (citation omitted). Thus, the Court is inclined to dismiss these claims without prejudice, but the Court would ask the parties to address this point at the December 3, 2018 hearing.

Thus, with no case or controversy remaining, the Court dismisses Counts 1-3 under Rule 12(b)(1) without prejudice.

### B. *The Court Dismisses Counts 4 and 5 (UCL Claims)*

a. <u>Count 4 Is Dismissed for Failure to State a Claim</u>

In the Complaint, Count 4 invokes Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Section 5") as the "predicate law" for a UCL claim. Compl. ¶ 78. While admitting that FTC Section 5 does not create a private right of action, Plaintiff asserts that it "can serve as [a] predicate for a [UCL] action." Opp. at 4 (citations omitted). Defendant argues that

9

Plaintiff has no remedy under FTC Section 5 as a private party and "cannot enforce provisions of the FTC Act under the UCL." Reply at 10. Defendant further argues that it "has [not] engaged in any unlawful business practice by merely asserting a patent that the law specifically states is presumed valid." *Id.* at 11.

The UCL proscribes three avenues to challenge business practices: if they are: "[1] unlawful, [2] unfair or [3] fraudulent . . . ." *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993). First, unlawful business practices are those "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994). Second, unfair business practices "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). Third, fraudulent business practices are those "likely to deceive the public." *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1471 (2006).

There is no private right of action under FTC Section 5. *See O'Donnell v. Bank of America, Nat. Ass'n*, 504 Fed. App'x 566, 568 (9th Cir. 2013); *see also Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280-81 (9th Cir. 1973). Though courts have held "that the California UCL does not create [a private right of action] for FTC Act claims," recently "the Ninth Circuit held in an unpublished decision that violations of the FTC Act can be actionable through a UCL cause of action." *Sperling v. Stein Mart, Inc.*, 291 F. Supp. 3d 1076, 1087 (C.D. Cal. 2018) (citing *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017)). Separately, the Ninth Circuit has long held that "[v]irtually any state, federal or local law can serve as the predicate for an action under [the UCL]." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (citations omitted). Based on the foregoing, the Court would find that Plaintiff may allege a UCL claim hinged on FTC Act Section 5, despite the fact the latter does not on its own provide a private right of action.

To prove unlawful competition under FTC Section 5, Plaintiff must show that "the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n). From the Court's review of the Complaint, Plaintiff only provides conclusory allegations in support of this claim. For example, Plaintiff alleges that "[t]he

conduct of [Defendant] and the [Defendant's] Entities amounts to an act or practice that causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." Compl. ¶ 81. Plaintiff further alleges that "[Defendant] and the [Defendant's] Entities methods have a direct, substantial, and reasonably foreseeable effect on consumers." *Id.* ¶ 82. Lacking sufficient factual allegations on this front, Plaintiff has failed to "allege sufficient facts under a cognizable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S at 555 (2007). A court should not accept such "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. at 663, or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d at 988.

The Court thus dismisses Count 4 under 12(b)(6) for failure to state a claim, but Plaintiff will have an opportunity to amend the Complaint as to this cause of action.

### b. Count 5 Is Dismissed for Failure to State a Claim

In Count 5, Plaintiff alleges another UCL claim but seemingly under the "unfair" prong rather than the "unlawful" prong.[4] Compl. ¶¶ 85-93. Defendant moves to dismiss that claim, arguing that Plaintiff does not allege sufficient standing under the UCL. Mot. at 21. Defendant further argues that the Court does not have diversity jurisdiction over this claim because Plaintiff has failed to meet the amount in controversy requirement. *Id.* In response, Plaintiff takes issue with both these arguments. *See* Opp. at 6-10.

Even though the Court can hear Plaintiff's UCL claim pursuant to diversity jurisdiction,[5]

---

[4] The Court assumes that Plaintiff brings this claim under the "unfair prong" based on the allegations in the Complaint. *See, e.g.*, Compl. ¶ 93 ("True Grit seeks all compensatory and statutory damages allowed under Section 17200's *Unfair Business Practices prong*.") (emphasis added).

[5] Plaintiff asserts that "[t]his Court has jurisdiction over [Plaintiff's] claims pursuant to 28 U.S.C. §§ 1338 and 1367, and 35 U.S.C. § 271. Should [Defendant] attempt to avoid adjudicating the merits of [Plaintiff's] declaratory judgment claims by filing a covenant not to sue, this Court maintains jurisdiction over [Plaintiff's] state law claims based on diversity jurisdiction." Compl. ¶ 6. Plaintiff further states that "[t]his Court [ ] has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the Parties reside in different states and there is more than $75,000 dollar at-issue." *Id.* ¶ 5. Defendant does not dispute that the parties reside in different states, but argues that "the Complaint does not contain any allegations which plausibly show that [Plaintiff] meets the amount in controversy." Mot. at 21. Plaintiff failed to provide information about the amount in controversy in its Complaint, but listed its estimated loss in revenue in its opposition. Opp. at 8. Plaintiff lists the following estimated costs:
- Product release delays $5,000-$10,000
- Cancelled product releases: $20,000-$30,000
- Cancellation of physical merchandise $5,000-$8,000

Opp. at 8.

Plaintiff again struggles to allege facts sufficient to satisfy Rule 12(b)(6). Before reaching the merits of Plaintiff's UCL claim, Plaintiff does not sufficiently allege standing under the UCL. To establish statutory standing under the UCL, "a private plaintiff [must] have suffered 'injury in fact and lost money or property as a result of the unfair competition.'" *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quoting Cal. Bus. & Prof. Code § 17204) (punctuation altered). A UCL plaintiff must show that he or she "'lost money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution, and also [show] a 'causal connection' between [the defendant's] alleged UCL violation and [his or] her injury in fact." *Id.* at 1203-04 (citations omitted); *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 (2008) ("The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation.").

Here, Plaintiff's allegations of harm under the UCL predominantly stem from Defendant's assertions regarding Counts 1 through 3. Compl. ¶¶ 86, 88-90 ("[Defendant] is engaged in the business practice of alleging patent infringement it knows to baseless and strong-arms small businesses into paying nuisance value settlements;" "[Defendant] profited by knowingly asserting an invalid patent by receiving settlement sums from hundreds of small businesses who cannot afford to litigate patent invalidity . . . .").[6] Plaintiff does not show how Defendant's UCL violations, separate and apart from Counts 1-3 for patent-related declaratory judgment, caused it "to suffer an injury and lose money or property." *Kemp v. Wells Fargo Bank, N.A.*, 17-cv-01259-MEJ, 2017 WL 4805567 at *15 (N.D. Cal. 2017) (dismissing Plaintiff's UCL claim for failing to show "how Defendant's *UCL violations* – as opposed to the other conduct she identifies in the FAC–caused her to suffer an injury or lose money or property.") (emphasis in original). The other allegations cited in the Opposition to support Plaintiff's argument that it was harmed are similarly insufficient. *See* Opp. at 8 (citing Compl. ¶¶ 14-17). Though Plaintiff pleads that Defendant sent an "enforcement email" to Plaintiff's Shopify account email (*see* Compl. ¶¶ 14-16), the allegations

---

Plaintiff goes on to state that "[t]he stake in the litigation costs as plead likely exceed twenty (20) times the requisite $75,000." Opp. at 9. Although Plaintiff's total estimated loss in revenue only amounts to a maximum of $48,000, attorney's fees and other costs associated with the litigation as pleaded in the Complaint are sufficient to meet the amount in controversy requirement. This is not a case where "upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292-93 (1938).

[6] Plaintiff's additional allegations of harm under its UCL claim are merely conclusory allegations about Defendant's "unethical, oppressive, unscrupulous" practice. Compl. ¶ 87.

that Shopify "can suspend a business" for infringement accusations and that Defendant's "phishing campaign has harmed True Grit's business relationship with Shopify" are both speculative and conclusory (*see* Compl. ¶ 17).

As such, Plaintiff has failed to sufficiently plead the requisite injury in fact to support its UCL claim. With insufficient factual allegations, the Court would dismiss Count 5 under 12(b)(6) for failure to state a claim. Dismissal without prejudice is appropriate.

### IV. Conclusion

For the foregoing reasons, the Court would **GRANT** Defendant's Motion to Dismiss Plaintiff's Declaratory Judgment Complaint. The Court would dismiss Counts 1-5 without prejudice.