1  LAMKIN IP DEFENSE
   Rachael D. Lamkin (246066)
2  655 Montgomery St., 7th Floor
   San Francisco, CA 94111
3  916.747.6091
   RDL@LamkinIPDefense.com
4

5  *Attorneys for DJ Plaintiff*
   *True Grit*
6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | Kindred Studio Illustration and Design, | ) | Case No.  2:18-cv-07661-GW-GJS |
   | LLC (aka True Grit) | ) | |
12 | | ) | |
   | Plaintiff, | ) | **PLAINTIFF'S NOTICE AND** |
13 | | ) | **MOTION FOR FEES PURSUANT** |
   | v. | ) | **TO 35 U.S.C. § 285** |
14 | | ) | |
15 | | ) | Hon. Gail J. Standish |
   | Electronic Communication Technology, | ) | |
16 | LLC | ) | Hearing: 1/30/2019, 10:00 am |
17 | | ) | CR: 640 |
   | Defendant. | ) | |
18 | | ) | |
19 | | ) | |
   | | ) | |
20

21

22                 **PLAINTIFF'S NOTICE AND MOTION FOR FEES**

23        Pursuant to 35 U.S.C. § 285 and the Court's inherent authority, Plaintiff

24 Kindred Studio Illustration and Design, LLC (d/b/a True Grit Texture Supply,

25 hereafter "True Grit") respectfully moves for the return of its attorney's fees.

26 ///

27 ///

28

## NOTICE OF MOTION AND HEARING

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on Wednesday January 30, 2018 at 10:00 am, or as soon thereafter as the matter may be heard in Courtroom 640, Roybal Federal Building and United States Courthouse, 255 E. Temple St., Los Angeles, CA, 90012, 6th Floor before the Honorable Gail J. Standish, Plaintiff will and hereby move the Court for an Order finding Defendant liable for attorney's fees under 35 U.S.C. § 285.

The Motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the accompanying Declarations and the exhibits thereto, all other pleadings, papers and evidence on file in this matter, and any such matters as the Court may consider at the time of the hearing on this motion.

This motion is made following the conferences of counsel pursuant to L.R. 7-3 which took place on December 3, 4 and 20, 2018.

Dated:     December 21, 2018

By: *Rachael D. Lamkin*
_____
Rachael D. Lamkin
Attorneys for Plaintiff

# TABLE OF CONTENTS

I.    INTRODUCTION ………………………………………..………5

II.   LEGAL STANDARDS ……………………..………………………5

   A. Prevailing Party………………………………………………...5

   B. Exceptional Case ………………………………………………6

III.  ARGUMENT………………………………………………………7

   A. True Grit Is The Prevailing Party ……………………………...7

   B. This Case Is Exceptional …………………………………….....8

          i)    ECT Walks Like A Duck (Where a Predator Acts Like

                a Predator, it is a Predator) …………………………8

          ii)   ECT's Infringement Allegations Were Objectively

                Baseless ………………………………………….…..10

          iii)  ECT Falsified Evidence to Demonstrate "Infringement"

          iv)   ECT's Assertions After McKinley ………………… 14

          v)    Deterrence Favors Fees ……………………………… 15

IV.   RULE 54 REQUEST FOR BIFURCATED BRIEFING……………..16

V.    CONCLUSION …………………………………………………16

# TABLE OF AUTHORITIES

*Dzinesquare, Inc. v. Armano Luxury Alloys, Inc.*, No. CV 14-01918 JVS (JCGx), 2015 U.S. Dist. LEXIS 178443 (C.D. Cal. Apr. 1, 2015)..................................................................8

*Eclipse IP LLC v. McKinley Equip. Corp.*, No. CV 14-154-GW(AJWx), 2014 U.S. Dist. LEXIS 125395 (C.D. Cal. Sep. 4, 2014)..........................................................10, 15

*Edekka LLC v. 3balls.com, Inc.,* Nos. 2:15-cv-541, 2:15-cv-585, 2015 U.S. Dist. LEXIS 168610, a (E.D. Tex. Dec. 17, 2015); ....................................................................10

*Eon-Net v. Flagstar Bancorp.*, 653 F.3d 1314, 1326-27 (Fed. Cir. 2011)...............................10, 15

*Highway Equip. Co, Inc. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006)....................*passim*

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014). ....................*passim*

*Pragmatus Telecom LLC v. Newegg Inc.*, 625 F. App'x 528 (Fed. Cir. 2015)...............................9

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs.,* 858 F.3d 1383 (Fed. Cir. 2017..................................................................10, 11

*S&T v. 1A Auto* ..................................................................11

*S&T v. Hall*..................................................................11

*S&T v. Lens Discounters* ..................................................................15

*Shipping & Transit, LLC v. Hall Enters.*, No. CV 16-06535-AG-AFM, 2017 U.S. Dist. LEXIS 109122 (C.D. Cal. July 5, 2017 ..........................................................10, 17

*Shipping & Transit, LLC v. Hall Enters.,* No. CV 16-06535-AG-AFM, 2017 U.S. Dist. LEXIS 109122, at *24 (C.D. Cal. July 5, 2017) ..........................................................10, 17

*Shipping & Transit, LLC v. LensDiscounters.com*, No. 16-80980-Civ, 2017 U.S. Dist. LEXIS 108182 (S.D. Fla. July 10, 2017);..........................................................10,17

*Shum v. Intel Corp.*, 629 F.3d 1360, 1366 (Fed. Cir. 2010)..................................................7

## I.   INTRODUCTION

Although repeatedly found to be harmful to innovation and the economy, patent monetization is not illegal.  Although unseemly, the intentional targeting of small businesses for ransom infringement rents is not alone illegal.  But, the assertion of spurious infringement allegations and the weaponization of weak or knowingly invalid patents in order to extort small businesses—and the human beings behind those businesses—violates Section 285 of the Patent Code and numerous recent court decisions, including decisions that have sanctioned shell entities ultimately owned by the same people that own Defendant ECT.

Here, ECT has asserted a package shipping notification patent against a company with digital products that never ship.  In so doing, it has fabricated its infringement charts, and hastily served a covenant not to sue ("CNS") when faced with a declaratory judgment complaint.

Further, by at least 2014, ECT understood the Asserted Claim to be patent ineligible.  (Complaint, ¶¶55-70.)  But that didn't stop ECT, … it never has.  Instead of setting aside its invalid patent, ECT went underground, serving stealth C&D's upon unsophisticated entities, entities that *cannot infringe* their dead patent. (Complaint, ¶¶19-35.)  Seeking nuisance value rents (here, $12,000), ECT repeatedly sought to extract money from small businesses and the people behind them.  These are not abstractions.  The recipients of ECT's letters are often people with no exposure to the legal system.  (Complaint, ¶¶47-55.)  ECT's letters and suits are terrifying, as ECT intends them to be.  (*Id*.)  Even in these most jaded of times, ECT's action should offend all who value fair play, the rule of law, and the patent system.  The patent system was designed to encourage the "useful arts," not to be weaponized.

Based on the Court's dismissal with prejudice in light of ECT's CNS, True Grit is the prevailing party under well-established law.   ECT's conduct, including

the assertion of baseless infringement allegations across thousands of litigations and the deep need for deterrence of future conduct warrants an award of attorney's fees.

## II.    LEGAL STANDARDS

### A. Prevailing Party

"Federal Circuit law defines 'prevailing party' for purposes of patent litigation." *Shum v. Intel Corp.*, 629 F.3d 1360, 1366 (Fed. Cir. 2010).  Discussing the prevailing party standard under Fed. R. Civ. P. 54(d), the Federal Circuit has stated: "For the purposes of costs and fees, there can be only one winner. A court must choose one, and only one, 'prevailing party' to receive any costs award." *Shum*, 629 F.3d at 1367; *see also Highway Equip. Co, Inc. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006) (noting Federal Circuit treats the "prevailing party issue under Rule 54 and 35 U.S.C. § 285 similarly.").

A party is not required to prevail on all its claims to be a prevailing party but must "have received at least some relief on the merits" that "materially alter[ed] the legal relationship between the parties" resulting in a direct benefit to the party claiming prevailing party status.  *Shum*, 629 F.3d at 1367-68 (addressing prevailing party requirements in context of "mixed judgment case" and finding defendant that avoided any "significant monetary liability" and obtained judgment with res judicata effect was the prevailing party despite plaintiff's success in obtaining judgment of co-inventorship on five of seven patents at issue).  This may, for example, occur where a court dismisses an action with prejudice following and based on execution of a covenant not to sue. *Highway Equip.*, 469 F.3d at 1035.

### B. Exceptional Case

Pursuant to 35 U.S.C. § 285 of the Patent Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  In April 2014, the U.S. Supreme Court adopted a new test for Section 285 fees. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014).  Rejecting the Federal

Circuit's more rigid test, the Supreme Court held that an exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id*. at 1756. The Supreme Court further instructed that "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id*.

'In exercising that discretion, courts may consider, among other factors, 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 134 S.Ct. at 1756 n.6.

The Supreme Court held that the moving party need only show by a preponderance of the evidence that it is entitled to fees under § 285. *Id*. at 1758; *see also Dzinesquare, Inc. v. Armano Luxury Alloys, Inc*., No. CV 14-01918 JVS (JCGx), 2015 U.S. Dist. LEXIS 178443, at *3-4 (C.D. Cal. Apr. 1, 2015).

## III.   ARGUMENT

### A. True Grit Is The Prevailing Party

Local Rule 54-1 provides that "[w]hen a case is dismissed or otherwise terminated voluntarily, the Court may, upon request, determine the prevailing party." True Grit respectfully requests confirmation that it is the prevailing party for purposes of awarding attorney fees.

The Federal Circuit has explicitly held that, "as a matter of patent law, the dismissal with prejudice, based on [a] covenant and granted pursuant to [a] district court's discretion under Rule 41(a)(2), has the necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties" sufficient to bestow "prevailing party status" on True Grit. *Highway Equip. Co. v.*

1  *FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006).  That is, "where such a dismissal
2  is paired with a covenant not to sue, [the Federal Circuit] has held that the dismissed
3  party **must** be regarded as the prevailing party."  *Pragmatus Telecom LLC v.*
4  *Newegg Inc.*, 625 F. App'x 528, 529 (Fed. Cir. 2015) (emphasis added; *citing*
5  *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006)).  This is
6  true even where, as here, the prevailing party is the declaratory judgment plaintiff.
7  *HTC Corp. v. Tech. Props.*, No. 5:08-cv-00882-PSG, 2014 U.S. Dist. LEXIS 99971,
8  at *11 (N.D. Cal. July 21, 2014) ("Because the dismissal of the claims related to the
9  [asserted] patents, and the incorporated covenant not to sue, were judicially
10  sanctioned and 'designed to be judicially enforceable.' [the declaratory judgment
11  plaintiff] HTC is the prevailing party with respect to those claims.")

12  **B. This Case Is Exceptional**

13  Intentionally freeing courts from the "rigid" Section 285 test set forth by the
14  Federal Circuit, the Supreme Court instructed: "an 'exceptional' case is simply one
15  that stands out from others with respect to the substantive strength of a party's
16  litigating position (considering both the governing law and the facts of the case) or
17  the unreasonable manner in which the case was litigated."  *Octane Fitness*, at 1756.
18  District courts should determine whether a case is "exceptional" in the case-by-case
19  exercise of their discretion, considering the totality of the circumstances.  *Id.*  Here,
20  True Grit seeks the return of its attorney's fees upon five bases: (1) ECT's predatory
21  litigation conduct; (2) the deep disparity in litigation strength among the Parties; (3)
22  ECT appears to have doctored its infringement allegations to hide actual conclusive
23  proof of non-infringement; (4) no reasonable party could have continued to assert
24  the '261 Patent after *McKinley*; and (5) the necessity of deterrence.

25      i)   *ECT Walks Like A Duck (Where a Predator Acts Like a Predator,*
26         *it is a Predator)*

27          "When I see a bird that walks like a duck and swims like
28           a duck and quacks like a duck, I call that bird a duck."

Poet James Whitcomb Riley (1849–1916).

Courts repeatedly sanction patent-holders that engage in nuisance value rent-seeking with no intention of litigating the merits.  *See Shipping & Transit, LLC v. Hall Enters.*, No. CV 16-06535-AG-AFM, 2017 U.S. Dist. LEXIS 109122 (C.D. Cal. July 5, 2017)*; Shipping & Transit, LLC v. LensDiscounters.com*, No. 16-80980-Civ, 2017 U.S. Dist. LEXIS 108182 (S.D. Fla. July 10, 2017); *Edekka LLC v. 3balls.com, Inc.,* Nos. 2:15-cv-541, 2:15-cv-585, 2015 U.S. Dist. LEXIS 168610, at *4 (E.D. Tex. Dec. 17, 2015); *Eon-Net v. Flagstar Bancorp*., 653 F.3d 1314, 1326-27 (Fed. Cir. 2011) (affirming the district court's finding of "indicia of extortion" where a plaintiff filed over 100 lawsuits and "[e]ach complaint was followed by a demand for quick settlement at a price far lower than the cost of litigation . . . .") (citation omitted); *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs.,* 858 F.3d 1383 (Fed. Cir. 2017) (reversing the lower court for declining to award attorney's fees).

The term "indicia of extortion" used by the *Eon-Net* trial court and repeated and affirmed by the Federal Circuit is particularly apt here.  In *Eon-Net*, the Court found indicia of extortion as "[d]ozens of parties (regardless of their actual business) have received the same complaint, claim chart, and settlement letter."  *Eon-Net*, at *18.  The Court noted that, given the high cost of patent litigation, "even the finest patent attorney would need to think carefully before advising a client to spend hundreds of thousands of dollars in litigation when a $25,000, $50,000, or $75,000 settlement was on the table."  *Id.*

ECT's conduct is far worse than the plaintiff in *Eon-Net*, whose conduct only reached 100 entities.  ECT's prosecuting attorney (Horstemeyer, who is also the named inventor) was able to obtain 28 patents from the original specification. (Lamkin Decl. ¶3, Exh. A).  ECT has asserted 27 of those patents a total of 875

times.  And in those 875 times, ECT has never taken a case to the merits.  Never.[1] ECT has never even asserted a patent long enough to reach claim construction.  *Id*. And these are just the public records.  We have no way of knowing how many secret cease and desist letters ECT has served demanding nuisance value amounts such as was demanded from True Grit ($15,000), but a fair estimate is in the tens of thousands.

The Federal Circuit encourages the award of fees where, as here, ECT demonstrates "a nationwide pattern" of nuisance suit litigation.  *See Rothschild*, 858 F.3d at 1389-90 (reversing an award of fees where the district court had "misjudged" plaintiff's conduct ***in other litigation*** and undisputed evidence of vexatious litigation warranted an exceptional case finding); *see S&T v. 1A Auto,* 283 F. Supp. 3d, at 1300 (awarding fees for a pattern of nationwide predatory litigation); *see also S&T v. Hall,* 2017 U.S. Dist. LEXIS 109122, at *20 (awarding fees and finding it "troubling that Plaintiff has repeatedly dismissed its own lawsuits to evade a ruling on the merits and yet persists in filing new lawsuits advancing the same claims.")

The Federal Circuit admonishment to weigh litigation conduct outside of any particular litigation stands to reason; the legal system was designed to resolve legitimate disputes, not to be weaponized by rent-seekers extorting nuisance value settlements from people that cannot afford to defend themselves.   And while any one particular litigation might not on its own raise to the level of exceptionality, a pattern of assertion and dismissal across litigations suggests an abuse of the legal system.

    *ii)*    *ECT's Infringement Allegations Were Objectively Baseless*

Courts have generally awarded attorneys' fees in patent cases when the

---

[1] Three of those patents were invalidated at the pleading stage under Section 101. *Eclipse IP LLC v. McKinley Equip. Corp.,* No. CV 14-154-GW(AJWx), 2014 U.S. Dist. LEXIS 125395 (C.D. Cal. Sep. 4, 2014).  But the Defendant, and not ECT, forced the decision on the merits.

alleged infringement claims are frivolous or objectively unreasonable.  *See Octane Fitness*, at 554; *Rothschild*, 858 F.3d, at 1388; *1A Auto,* 283 F. Supp. 3d, at 1297.  Here, ECT's infringement allegations are unquestionably frivolous.

On August 11, 2018, True Grit received an email directed to "Corporate" through the account for customer contacts on the Shopify platform.  That email is copied into the Complaint at paragraph 14 ("Complaint, ¶14).  (Fairclough Decl., ¶4.)  Mr. Fairclough believed the email was phishing given that it was addressed to "Corporate" and seemed to be a mass email.  (*Id.*, at 54.)  But, concerned about the legal ramifications of not responding if the mail was genuine, Mr. Fairclough responded to ECT as follows, "I received your note however the letter mentioned was not attached. Please forward at your convenience." (*Id.*, at ¶6).  On that same day, ECT responded, "Please see attached also sent via courier. ECT can offer settlement for ***$12,000*** and is open to a counter to reach an expedited resolve."  (*Id.*, at ¶6, emphasis added).   This alone demonstrates the nuisance value of the suit. Without even considering True Grit's revenue for the accused products, ECT offered $12,000 to resolve the matter sight unseen.

On August 15, 2018, True Grit received an infringement letter from ECT, attaching an infringement chart. (Dkt. No. 1-3.)  Although not a patent attorney, Mr. Fairclough was puzzled by the chart's repeated mention of words like "shipping" and "stop location".   (Fairclough Decl., ¶¶9-14.)  True Grit sells, ***as a digital download***, an authoring tool that allows other designers to employ a unique textured design aesthetic that Mr. Fairclough developed over decades.  By way of example, the following illustration done by Mr. Fairclough appeared in Rolling Stone Australia's 2017 review of the 'Prisoner" Ryan Adams album:



True Grit's design tools allow other designers to employ Andrew's acclaimed aesthetic by purchasing a digital tool delivered via download.  There is no way to receive these tools via physical delivery (e.g., truck or package delivery of any type).

It is beyond reasonable dispute that the Asserted Claim covers physical delivery:

11. An automated notification system, comprising:

     one or more transceivers designed to communicate data;

     one or more memories;

     one or more processors; and

     computer program code stored in the one or more memories and executed by the one or more processors, the computer program code comprising:

code that enables a first party associated with a personal communication device (PCD) to input or select authentication information for use in connection with a subsequent notification communication session involving advance notice of **a delivery or pickup of a good or service <u>at a stop location</u>** by a mobile **thing** (MT);

code that causes storage of the authentication information;
code that **monitors location or travel information in connection with the MT**;

code that causes initiation of the notification communication session to the PCD with the one or more transceivers, in advance of arrival of the MT <u>at the stop location</u>, based at least in part upon **the location or travel information associated with the MT**;

code that, during the notification communication session, provides the authentication information to the PCD that indicates to the first party that the notification communication session was initiated by an authorized source; and

code that, during the notification communication session, enables the first party to select whether or not to engage in a communication session with a second party **having access to particulars of the pickup or delivery**.

(Asserted Patent, Claim 11, ECT Infringement Chart, Dkt. No. 1-3.)

There is simply no reasonable basis to conclude that electronic transfer of a digital file can meet any of the above-highlighted requisite limitations of the Asserted Claim.  ECT's frivolous infringement allegations merit an award of attorney's fees.

ECT's allegations are so baseless that as soon as True Grit filed its declaratory judgment complaint, ECT offered True Grit a covenant not to sue for free, making clear that, once again, ECT had no intention of litigating the merits of its

1  infringement allegations.[2]

2  Each of the two examples of improper conduct above are sufficient to award

3  attorney's fees.  *See S&T v. Lens Discounters*, at *4.  But ECT's brazen conduct

4  exceeds your garden variety litigation misconduct.

5  ### iii)   ECT Falsified Evidence to Demonstrate "Infringement"

6  Not only are ECT's infringement allegations frivolous, they appear to be

7  fabricated.  There is no evidence that ECT ever ordered an Accused Product as part

8  of a pre-suit investigation.  (Fairclough Decl., ¶15.)   This too weighs in favor of an

9  award of attorney's fees.  *See Eon-Net*, 2010 U.S. Dist. LEXIS 143114, at *16 (*aff'd

10  Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011)).   Instead, ECT

11  appears to have used screenshots from True Grit's Frequently Asked Questions

12  ("FAQ") exemplars, and then carefully edited out the "digital download" language

13  from those FAQ exemplars to create the images in ECT's infringement chart.

14  (Fairclough Decl., ¶¶16-19, Dkt. No. 1-3, at 8 of 11.)    That is, the evidence

15  suggests that ECT both (1) knows that the accused product is a digital download and

16  can't infringe, (2) but nonetheless doctored images on True Grit's website to

17  circumvent clear evidence of non-infringement.

18  ### iv)   ECT's Assertions After McKinley

19  In 2014, Judge Wu found patent ineligible all asserted claims in three patents

20  belonging to the same family as the patent at-issue here.  *Eclipse IP LLC v.

21  McKinley Equip. Corp.*, No. CV 14-154-GW(AJWx), 2014 U.S. Dist. LEXIS

22  125395 (C.D. Cal. Sep. 4, 2014).  Indeed, the Asserted Patent shares the same

23  specification as the claims found to be patent ineligible in *McKinley* and the claims

24  of the Asserted Patent are indistinguishable from the claims found to be patent

25
26  [2] Although ECT suggested a CNS early in the case, it did not provide a CNS until
    October 22, 2018.  And even then, True Grit believed that the CNS was not
27  sufficiently broad and ECT refused to compensate True Grit for the unnecessary
28  attorney's fees already paid.

ineligible in *McKinley*.  The claims and the specification of the Asserted Patent and the *McKinley* patents (again, sharing the same specification) share the same fatality: "the claims, read in light of the specification, were deliberately drafted to recite hardware in only the most generic sense." *McKinley*, at *20.  No reasonable litigant could think the claims of the Asserted Patent survive *McKinley*.

Asserting Claims that any reasonable litigant would understand to fail the Section 101 calculus should suggest—even absent the above conduct—attorney's fees are appropriate. *See Edekka,* at *13.  Rather than acknowledge the effect of the *McKinley* decision on the Asserted Patent, ECT pressed forward with continued infringement allegations and rent seeking.  Attorney's fees are warranted. *See id.*

### v)  Deterrence Favors Fees

The Supreme Court also asks courts to consider whether deterrence is needed in their Section 285 calculus. *Octane Fitness*, 554 n.6 (*citing Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)).  ECT has gotten away with 875 predatory litigations and an unknown but likely vast number of secret cease and desist extortions.   It's important at this stage—frankly any stage—to remember that patent enforcement actions against small companies are actions against people.  In fact, in depth reporting on the owners of ECT, Jones, Sirianni, and Horstemeyer, suggests that these individuals intentionally target small businesses—and the people behind them—because small business owners are more likely to be scared, intimidated, and ultimately succumb to the targeted extortion. (*See* Complaint,  ¶¶47-54.)  That is certainly the case with Mr. Fairclough, who was "devastated" by ECT's infringement allegations, fearing for the future viability of his company.  (Fairclough Decl., ¶¶21-23.)  Ultimately, the only reason Mr. Fairclough didn't pay ECT was because his own research revealed the activity of the ECT owners across thousands of litigations (as Shipping and Transit, LLC, ArrivalStar S.A., Melvino Technologies Limited, Eclipse IP, Motivational Health Messaging, and ECT) and

outrage overrode his fear.

## IV.    RULE 54 REQUEST FOR BIFURCATED BRIEFING

Pursuant to Fed. R. Civ. P. 54(d)(2)(C), True Grit respectfully requests that the Court decide only liability for attorney fees at this time.  True Grit requests that briefing regarding the amount and reasonableness of its attorney fees be set for a later date– a procedure the Court has allowed in prior cases. *See, e.g., Universal Electronics, Inc. v. Universal Remote Control, Inc.,* No. 12-cv-329, 2015 U.S. Dist. LEXIS 91403, at \*25-26 (C.D. Cal. Mar. 10, 2015); *Shipping & Transit, LLC v. Hall Enters.,* No. CV 16-06535-AG-AFM, 2017 U.S. Dist. LEXIS 109122, at \*24 (C.D. Cal. July 5, 2017).  Bifurcation under Rule 54(d)(2)(C) will enable the Parties to tailor their evidentiary presentation to the Court's liability decision, thus streamlining the process and avoiding unnecessary expenditures of resources and paperwork.  Accordingly, this brief does not address the amount or reasonableness of True Grit's attorney fees.  True Grit stands ready to provide further briefing and evidence on such issues once instruction is received from the Court.

## V.    CONCLUSION

We live in jaded times, where online investors make fun of "bag holders," where all is fair in love and venture capital.  But there is still a line between right and wrong, and the direct result of failing to sanction entities like ECT is more predatory patent assertions.  Against People.  Real people.   ECT's conduct necessitates sanction else invites further predation.

True Grit need only show by a preponderance of the evidence that it is entitled to fees under § 285.  True Grit respectfully asks this Court for an order determining said burden to be met and awarding further briefing on the amount and reasonableness of fees.

Respectfully submitted,


*Rachael D. Lamkin*
Rachael D. Lamkin

*Attorneys for DJ Plaintiff*
*True Grit*


## CERTIFICATE OF SERVICE

On this date, December 21, 2018, the following documents were served upon Eloqui's counsel of record through the Court's ECF system:

**PLAINTIFF'S NOTICE AND MOTION FOR FEES PURSUANT TO 35 U.S.C. § 285**

*Rachael D. Lamkin*
Rachael D. Lamkin
LAMKIN IP DEFENSE
655 Montgomery St., 7th Floor
San Francisco, CA 94111