JEAN G. VIDAL FONT, State Bar No. 266475
jvidal@ferraiuoli.com
FERRAIUOLI LLC
221 Ponce de León
5th Floor
San Juan, PR 00917
Telephone:     787-766-7000
FACSIMILE: 787-766-7001

Counsels for Electronic Communications Technologies, LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Kindred Studio Illustration and Design LLC d/b/a True Grit**<br><br>        Plaintiff,<br><br>        v.<br><br>**Electronic Communications Technologies, LLC**<br>        Defendant | CASE NO.: **2:18-cv-07661-GW-GJS**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
## FIRST AMENDED COMPLAINT

Defendant Electronic Communications Technologies, LLC ("Defendant" or "ECT") submits this brief in support of its motion to dismiss Plaintiff Kindred Studio Illustration and Design LLC d/b/a True Grit's ("Plaintiff" or "True Grit") First Amended Complaint against Defendant.

## Table of Contents

I.   **INTRODUCTION**                                                          5

II.  **LEGAL STANDARD**                                                        6

   A.   FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)                      6

III. **TRUE GRIT'S COUNTS 1 AND 2 OF THE FIRST AMENDED**
**COMPLAINT SHOULD BE DISMISSED**                                             8

   A.   Plaintiff's Allegation of Unlawful Competition in Count 1 of the
FAC Should be Dismissed for Failure to State a Claim                          8

      i.   The FTC case cited by True Grit is distinguishable from the
case at bar                                                                   8

      ii.  True Grit failed to state a claim under the FTC Act as the
predicate law for a UCL Claim                                                12

      iii. True Grit failed to state a claim wherein inequitable
conduct serves as the predicate law for a UCL Claim                          17

   B.   Plaintiff's Allegation of Unfair Competition in Count 2 of the
FAC Should be Dismissed for Failure to State a Claim                         21

IV.  **CONCLUSION**                                                          24

TABLE OF AUTHORITIES

*Ashcroft v. Iqbal*,

  556 U.S. 662 (2009)------------------------------------------------------------------ 7

*Bell Atl. Corp. v. Twombly*,

  550 U.S. 544 (2007)---------------------------------------------------------------- 6, 7

*Brown v. Perris Park Apartments P'ship*,

  No. EDCV1702487JGBSPX, 2018 WL 3740522 (C.D. Cal. July 17, 2018)------ 7

*Capella Photonics, Inc. v. Cisco Systems, Inc.*,

  77 F.Supp.3d 850 (2014) ----------------------------------------------------------- 16

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,

  20 Cal. 4th 163 (1999) -----------------------------------------------------------9, 18

*Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*,

  524 F.3d 1254 (Fed. Cir. 2008) ------------------------------------------------ 11, 19

*Exergen Corp. v. Wal–Mart Stores, Inc.*,

  575 F.3d 1312 (Fed.Cir.2009) ---------------------------------------------------- 15

*Khoury v. Maly's of California, Inc.*,

  14 Cal. App. 4th 612 (1993) ------------------------------------------------------- 8

*Kwikset Corp. v. Superior Court*,

  51 Cal. 4th 310  (2011) ------------------------------------------------------------ 18

*McKell v. Washington Mut., Inc.*,

   142 Cal. App. 4th 1457 (2006) -------------------------------------------------- 9

*Navarro v. Block*,

   250 F.3d 729 (9th Cir. 2001)-------------------------------------------------- 6

*Phillips v. AWH Corp.*,

   415 F.3d 1303 (Fed. Cir. 2005) ----------------------------------------------- 9

*Sperling v. Stein Mart, Inc.*,

   291 F. Supp. 3d 1076 (C.D. Cal. 2018)------------------------------------- 18

*Sprewell v. Golden State Warriors*,

   266 F.3d 979 (9th Cir. 2001)-------------------------------------------------- 6

*Starr v. Baca*,

   652 F.3d 1202 (9th Cir. 2011) ----------------------------------------------- 7

*Sylvia Landfield Trust v. City of Los Angeles*,

   729 F.3d 1189 (9th Cir. 2013) ------------------------------------------- 12, 13

*Therasense, Inc. v. Becton, Dickinson and Co.*,

   649 F.3d 1276 (Fed.Cir.2011) (en banc) --------------------------------- 16

*Zep Solar Inc. v. Westinghouse Solar Inc.*,

   No. C–11–6493 JSW, 2012 WL 1293873 (N.D.Cal. Apr. 16, 2012)------------ 15

<u>STATUTES</u>

15 U.S.C. § 45------------------------------------------------------------- 18

## I.   INTRODUCTION

Plaintiff, Kindred Studio Illustration and Design, LLC d/b/a True Grit filed a Declaratory Judgment Complaint on August 31, 2018, as a response to ECT's written communication concerning the infringement of U.S. Patent No. 9,373,261 (the '261 Patent). (Dkt. No. 1). The Complaint alleged five causes of action: (1) a declaratory judgment for invalidity of the '261 Patent; (2) a declaratory judgment of non-infringement of the '261 Patent; (3) a declaratory judgment of inequitable conduct; (4) a state claim of unlawful competition; and (5) a state claim of unfair competition. In response, ECT moved to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim. (Dkt. No. 21). Subsequently, True Grit filed an Opposition to ECT's Motion to Dismiss (Dkt. No. 25) and ECT filed a Reply (Dkt. No. 26) in response to True Grit's Opposition.

On December 3, 2018, after hearing oral argument and evaluating the parties' position, the Court issued a Tentative Ruling on ECT's Motion to Dismiss True Grit's Declaratory Judgment Complaint. (Dkt. No. 29). In the Tentative Ruling the Court dismissed Counts 1 through 3 because it found that the executed Covenant-Not-To-Sue ("CNS") provided by ECT to True Grit was sufficient to moot the case of controversy as to invalidity, non-infringement and inequitable conduct of the '261 Patent. Additionally, the Court dismissed True Grit's Count 4 and 5 for failure to state a claim under Rule 12(b)(6). In particular. the Court noted that True Grit only

provided conclusory allegations in support of these claims; and as such, dismissed Counts 4 and 5 for failure to state a claim.

In view of the foregoing, True Grit decided to amend the original Complaint by eliminating Counts 1-3; leaving only the counts related to Unlawful and Unfair Business Practices under California Business and Professions Code Section 17200. Accordingly, True Grit filed a First Amended Complaint ("FAC") on December 24, 2018. (Dkt. No. 33). As was the case with the original Complaint, however, the FAC fails to state a claim for either unlawful or unfair competition because it does not allege facts sufficient to satisfy Rule 12(b)(6).

For this, ECT moves this Court to dismiss True Grit's First Amended Complaint with prejudice.

## II.   LEGAL STANDARD

### A. FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

Rule 12(b)(6) requires dismissal when a plaintiff has failed to present a cognizable legal theory or to allege sufficient facts supporting a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). While a court resolving a motion to dismiss must accept as true "all the allegations in the complaint," it need not accept "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A court must identify and disregard unreasonable inferences, unwarranted

deductions of fact, or legal characterizations in the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). After accepting only the well-pleaded allegations as true, a court then determines whether a complaint alleges a "plausible" claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Brown v. Perris Park Apartments P'ship*, No. EDCV1702487JGBSPX, 2018 WL 3740522, at *3 (C.D. Cal. July 17, 2018) (citing *Twombly*, 550 U.S. at 555 (citations omitted)). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id*. (citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

[Remainder of Page Intentionally Blank]

## III.  TRUE GRIT'S COUNTS 1 AND 2 OF THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED

### A. Plaintiff's Allegation of Unlawful Competition in Count 1 of the FAC Should be Dismissed for Failure to State a Claim

In Count 1 of the FAC, True Grit alleges that ECT has purportedly engaged in unlawful competition under California Business and Professions Code Sections 17200 et. Seq. ("UCL"). Additionally, True Grit contends that the predicate law for True Grit's unlawful competition claim is the Federal Trade Commission Act ("FTC Act") Section 5, 15 U.S.C. § 45. (Dkt. No. 33 at ¶ 89). In the alternative, True Grit contends that the predicate law is inequitable conduct. (*Id*. at ¶ 90). Under both alternatives, however, True Grit allege facts sufficient to satisfy Rule 12(b)(6).

### i.  The FTC case cited by True Grit is distinguishable from the case at bar

As noted above, True Grit alleges that ECT has engaged in unlawful competition under the UCL, invoking Section 5 of the FTC Act as the predicate law for its UCL claim. (Dkt. No. 33 at ¶¶ 88-101). To support this allegation, True Grit cites, but does not discusses, a case instituted by the FTC against Negotiated Data Solutions LLC ("NDS")—a patent assertion entity—and its predecessor in interest, Vertical Networks, Inc. ("Vertical"), for engaging in unfair acts or practices and unfair methods of competition through which it sought to break a licensing commitment that its predecessor, National Semiconductor ("National"), made to the

Institute of Electrical and Electronics Engineers ("IEEE"), a standard setting organization, in 1994. (See Exhibit 1 at ¶ 1). The relevant standard (i.e., Fast Ethernet), which included the technology subject to the licensing commitment (i.e., an autonegotiation technology developed by National, and referred to as "NWay,"), was subsequently adopted by the industry. *Id*. As discussed below, however, the case is clearly distinguishable from the case at bar.

In that case, the FTC alleged that in a June 7, 1994 letter to the IEEE, National had indicated that it would license the relevant technology to any requesting party for a one-time fee of one thousand dollars ($1,000), fully knowing that, as a result of its assurance, it could be forgoing significant licensing revenues. *Id*. at ¶¶ 13-14. In 1998 National assigned the relevant technology and all patents (the "Patents") related to said technology to Vertical. *Id*. at ¶¶ 22-24. In the assignment, Vertical acknowledged that it had been informed "that several of the patents may be 'encumbered' by whatever actions [National] may have taken in the past with respect to the IEEE standards." *Id*. Moreover, the final agreement between Vertical and National stated that the assignment was "subject to any existing licenses and other encumbrances that [National] may have granted." *Id*.

Subsequently, Vertical sought to generate new revenue streams by licensing the Patents and enforcing its rights against third parties it believed might infringe those Patents; and in 2002 sent a letter to the IEEE asserting that one or more of the

Patents "may be applicable to portions and/or amendments of" the IEEE standard. *Id*. at ¶ 27. In the 2002 letter Vertical referenced the June 7, 1994 letter, but it did not mention that National had committed the relevant technology for a one-time fee of one thousand dollars. *Id*. The 2002 letter concluded by claiming that "the assurances provided in this letter supersede any assurances provided by National Semiconductor Corporation relevant to the above-identified patents." *Id*. Several companies sought to accept the original licensing offer and tendered $1,000 in accordance with the June 7, 1994 letter; but Vertical rejected. In turn, Vertical threatened or initiated legal actions against companies that refused to pay the royalties it demanded. *Id*. at ¶¶ 30-31. As a result of that effort, several companies entered into licensing agreements that produced licensing fees for the Patents far in excess of $1,000 per company. *Id*.

Lastly, on or about November 14, 2003, Vertical assigned the Patents to NDS. *Id*. at ¶¶ 33-34. NDS was also familiar with the June 7, 1994 letter of assurance when it received assignment of the Patents from Vertical. *Id*, Nevertheless, NDS continued to assert the Patents without regard to the June 7, 1994 letter of assurance. *Id*. at ¶ 35. Thus, the FTC instituted the action under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 because the aforementioned acts by NDS and Vertical were to the prejudice and injury of consumers. *Id*. at ¶ 36 Namely, consumers having to pay: increased royalties associated with the manufacture, sale,

use or importation of products that implement an IEEE standard enabling autonegotiation; and increases in price and/or reductions in the use or output of products that implement an IEEE standard enabling autonegotiation. *Id.*

In view of the foregoing discussion, the case cited by True Grit is clearly distinguishable from the case at bar. For example, the patentee and its predecessor in interest disregarded and breached a licensing commitment that National had made to the IEEE. In the instant case, however, there has been no breach of any licensing commitment. Furthermore, the patentee and its predecessor in interest in the FTC case were both aware that the assignment of the Patents were encumbered by whatever actions National may had taken in the past with respect to the IEEE standards. Here, on the other hand, that was not the case. Lastly, since the relevant standard and technology in the FTC case had been adopted by the industry, the patentee's and its predecessor in interest's actions had a direct and adverse impact on consumers.  Here, the technology of the '261 Patent has not been adopted as an industry standard; and the letter sent by ECT to True Grit—that was subsequently rendered moot by a CNS— concerned only True Grit; not consumers in general.

As such, True Grit's reliance on the FTC Case is improper since that case has specific facts that are clearly distinguishable from the case at bar; and should be given no deference.

### ii.  True Grit failed to state a claim under the FTC Act as the predicate law for a UCL Claim

The UCL proscribes three avenues to challenge business practices, they are: "[1] unlawful, [2] unfair or [3] fraudulent . . ." *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993). First, *unlawful* business practices are those "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994). Second, *unfair* business practices "means conduct that threatens an incipient violation of an antitrust law; or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). Third, *fraudulent* business practices are those "likely to deceive the public." *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1471 (2006).

Furthermore, to prove unlawful competition under Section 5 of the FTC Act, a plaintiff must show that "the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Here, True Grit alleges that ECT's unlawful business practice stems from ECT's purported bad faith patent prosecution and enforcement. (Dkt. No. 33 at ¶ 93). As discussed below, however, the allegations upon which True Grit relies to show unlawful competition under FTC Section 5, fail to satisfy the aforementioned test. For example, in support of ECT's purported bad faith patent enforcement, the FAC indicates that since "True Grit's product is a digital tool delivered via digital download…any allegations of infringement of the '261 Patent (aimed at notifications for shipping products to a physical "stop" location) are both objectively and subjectively baseless." (Dkt. No. 33 at ¶ 11). As a threshold matter it should be noted that the claims of the '261 Patent do not recite nor require a "physical stop location," and such requirement by True Grit amounts to improperly reading limitations from the written description into the claims. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1319-20 (Fed. Cir. 2005) (en banc) ("[O]ne of the cardinal sins of patent law [is] reading a limitation from the written description into the claims.") Furthermore, the specification for the '261 Patent clearly indicates that:

> "As depicted in FIG. 1, an MT [i.e., mobile thing] control unit (MTCU) 15 is disposed on an MT 17, which is capable of transporting the MTCU 15 over various distances. For example, **MT 17 can be any movable object or thing**, including but not limited to, a motor vehicle, such as an automobile, motorcycle, truck, bus, limousine, or taxicab, a bicycle, an aircraft such as an airplane, helicopter, balloon, or rocket, a train, a water vehicle such as a cruise ship, cargo ship, or other boat/ship,

a package, a human being, an animal, **an electronic email or transmission**, an amusement park vehicle, or any other thing capable of being moved across or through the Earth's surface and/or atmosphere." '261 Patent at 10:31-47. (emphasis provided).

Accordingly, since the MT may be an email or transmission (e.g., a download), then the "stop location" referenced in independent claims 1 and 11 of the '261 Patent does not exclusively refer to a "physical" location or address; it may also refer to the server where the email or transmission is received or the IP address of the server where the email is received. Therefore, ECT's allegations of infringement are supported by the specification; and as such, are not objectively or subjectively baseless; nor asserted in bad faith.[1] Thus, since ECT's infringement theory is supported by the intrinsic evidence (i.e., '261 Patent specification), it had reason to belief that its allegations would be successful on the merits; and therefore, it may not be reasonably inferred that ECT litigated the '261 Patent in bad faith. *See Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008) (citing *GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374 (Fed.Cir.2007) ("To be objectively baseless, the infringement allegations must be such that "no reasonable litigant could reasonably expect success on the merits.") For this reason, ECT's patent enforcement cannot be considered an "act or practice

---

[1]  At most, True Grit's bad faith patent enforcement argument appears to be a claim construction issue; rather than one rooted in unlawful competition under the UCL.

[that] causes or is likely to cause substantial injury to consumers", as required by Section 5 of the FTC Act. 15 U.S.C. § 45(n). In sum, True Grit's bad faith patent enforcement allegation does not contain "factual content that allows the court to draw the reasonable inference that [ECT] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013). As such, True Grit's bad faith patent enforcement allegations must be dismissed for failure to state a claim under Rule 12(b)(6).

Additionally, in support of ECT's purported bad faith patent prosecution, the FAC indicates that the inventor—Scott A. Horstemeyer—procured the '261 Patent in bad faith by purportedly "burying" material references in "a twenty-eight (28) page Information Disclosure Statement ('IDS') containing hundreds of disclosures." (Dkt. No. 33 at ¶¶ 57). The Code of Federal Regulations ("C.F.R."), however, clearly indicates that "[t]he duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office **or submitted to the Office in the manner prescribed by §§ 1.97(b)-(d)** [(i.e., filing of information disclosure statement)] **and 1.98** [(i.e., content of information disclosure statement)]." 37 C.F.R. ¶ 1.56 (emphasis added). Here, the inventor submitted material references via an IDS; thereby complying with the procedure set forth in the C.F.R. to satisfy his duty of disclosure to the U.S. Patent and Trademark Office

("USPTO"). The fact that the IDS contained 28 pages is irrelevant to the determination of whether the inventor satisfied the duty of disclosure, candor or good faith in dealing with the USPTO. Since the inventor complied with his duty of disclosure to the USPTO, it cannot be reasonably inferred that he procured the '261 Patent in bad faith.  For this reason, ECT's patent prosecution cannot be considered an "act or practice [that] causes or is likely to cause substantial injury to consumers", as required by Section 5 of the FTC Act. 15 U.S.C. § 45(n). Therefore, True Grit's bad faith patent prosecution allegation does not contain "factual content that allows the court to draw the reasonable inference that [ECT] is liable for the misconduct alleged". *Iqbal*, 556 U.S. at 678; *Sylvia*, 729 F.3d at 1191. As such, True Grit's bad faith patent prosecution allegations must be dismissed for failure to state a claim under Rule 12(b)(6).

Lastly, as discussed above, unlawful business practices are those "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders*, 27 Cal. App. at 838-39. Here, it must be noted ECT has not engaged in any unlawful business practice forbidden by law. In fact, ECT has done the opposite. ECT has asserted a U.S. patent that is presumed valid under U.S. patent law. *See* 35 U.S.C § 282. Furthermore, the claims in the '261 Patent are substantially different from the claims of other patents in the same family that True Grit alleges were found invalid in 2014. (Dkt. No. 33 at ¶ 75-87) In particular, the '261 Patent

includes a plurality of limitations not found in those other patents which is readily apparent when reading the claims at issue and the ones in those patents side-by-side. As such, ECT is not asserting the '261 Patent through fraudulent means or knowingly asserting an invalid patent. Furthermore, asserting a patent which is presumed valid under the laws of the United States does not affect or cause injury to consumers in general; it only affects potential infringers. Thus, it cannot be reasonably inferred that ECT has engaged in any unlawful business practice by merely asserting the '261 Patent.

In view of the foregoing, the allegations in the FAC do not allow the Court to draw the reasonable inference that ECT's purported "act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n). As such, True Grit failed to state a claim under the FTC Act as the predicate law for a UCL Claim; and therefore, Count 1 of the Complaint must be dismissed with prejudice under Rule 12(b)(6).

### iii.   True Grit failed to state a claim wherein inequitable conduct serves as the predicate law for a UCL Claim

As another example of purported bad faith patent prosecution, True Grit indicates that the inventor engaged in inequitable conduct by failing to disclose references to Hancock and Foladare in the application of the '261 Patent. (Dkt. No.

33 at ¶¶ 62-65). These references were used—by an examiner different than the one in charge of the examination of the '261 Patent—to reject all claims in application No. 10/858,774 ("'774 application"), which has a specification that is mostly similar to the one from the '261 Patent. The claims in both applications, however, are not similar at all; and True Grit fails to mention that the claims of the '261 Patent recites limitations that are not recited in the claims of the '774 application, nor examined during prosecution of the '774 application. For example, the independent claims of the '261 Patent requires "enabling a first party associated with a personal communication device (PCD) to input or select authentication information for use in connection with a subsequent notification communication session involving advance notice of a delivery or pickup of a good or service at a stop location by a mobile thing". This limitation was cited by the examiner in the notice of allowance of the '261 Patent as one of his reasons for allowing the claims. See Exhibit 2 – Notice of Allowance. Furthermore, the foregoing limitation is but one of the limitations in the claims of the '261 Patent that are not recited in the '774 application nor in the cited references. As such, failure to disclose these references does not establish inequitable conduct.

Federal Circuit law governs the sufficiency of allegations of inequitable conduct. *See Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed.Cir.2009). "Under Federal Circuit law, all averments of fraud and inequitable

conduct, including affirmative defenses, fall within the strictures of [Federal] Rule [of Civil Procedure] 9(b) and must be stated with particularity." *Zep Solar Inc. v. Westinghouse Solar Inc.*, No. C–11–6493 JSW, 2012 WL 1293873, at *2 (N.D.Cal. Apr. 16, 2012) (citing *Exergen*, 575 F.3d at 1326). To satisfy the "particularity required by Rule 9(b), the pleading must state the 'who, what, when, where, and how' of the misrepresentation or omission made to the PTO." *Id*. (quoting *Exergen*, 575 F.3d at 1327) "The essential elements of a claim of inequitable conduct under Federal Circuit law are: (1) an individual associated with the filing and prosecution of a patent application affirmatively misrepresents a material fact, fails to disclose material information, or submits false material information; and (2) the individual does so with the specific intent to deceive the [Patent Office]." *Capella Photonics, Inc. v. Cisco Systems, Inc.*, 77 F.Supp.3d 850 (2014) (citing *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed.Cir.2009)). The "materiality required to establish inequitable conduct is but-for materiality." *Id*. (citing *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1291 (Fed.Cir.2011) (en banc). "[P]rior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id*.

Here, the '261 Patent would have been granted in spite of the non-disclosure of Hancock and Foladare because these references do not teach or suggest every limitation recited in the claims of the '261 Patent. As such, Hancock and Foladare

are not material to the patentability of the claims in the '261 Patent; and the inventor's purported failure to disclose these references does not evidences inequitable conduct.  As such, True Grit's allegation of bad faith on the part of ECT for failure to disclose material information allegations must be dismissed for failure to state a claim under Rule 12(b)(6).

True Grit further contends that the inventor Horstemeyer engaged in inequitable conduct because Horstemeyer prosecuted a number of applications "covering the idea of shipping notifications" for former client Martin Kelly Jones, before the filing of the '261 Patent. (Dkt. No. 33 at ¶¶ 54-56, 65). True Grit seems to suggest that Horstemeyer is preempted from obtaining a patent in that same field. Such conclusion would be incorrect. True Grit ignores that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor..." 35 U.S.C. § 101. Additionally, the claimed invention must also be found to be non-obvious to a person having ordinary skill in the art before the effective filing date of the claimed invention. 35 U.S.C. § 103. The patent application for the '261 Patent met these requirements; and therefore, Horstemeyer was able to obtain a patent after a full and fair examination by the USPTO, even if it was in the same field as the patents obtained by Jones. In any event, the FAC does not contain allegations that would allow the court to draw the reasonable inference that the '261 Patent is invalid

and/or unenforceable simply because it is in the same field as the patents of a third party. See *Iqbal*, 556 U.S. at 678. As such, True Grit's allegation of inequitable conduct on the part of ECT must be dismissed for failure to state a claim under Rule 12(b)(6).

In view of the foregoing, the allegations in the FAC do not allow the Court to draw the reasonable inference that an individual associated with the filing and prosecution of the application for the '261 Patent affirmatively misrepresented a material fact, failed to disclose material information, or submitted false material information; and that the individual did so with the specific intent to deceive the USPTO. As such, True Grit failed to state a claim under wherein inequitable conduct serves as the predicate law for a UCL Claim; and therefore, Count 1 of the Complaint must be dismissed with prejudice under Rule 12(b)(6).

### B. Plaintiff's Allegation of Unfair Competition in Count 2 of the FAC Should be Dismissed for Failure to State a Claim

In Count 2 of the Complaint True Grit alleges that ECT has purportedly engaged in unfair business practice under the California Business & Professions Code, § 17200. (See Dkt. No. 33 at ¶¶ 102-113). As previously discussed, unfair business practices "means conduct that threatens an incipient violation of an antitrust law; or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly

threatens or harms competition." *Cel-Tech Commc'ns*, 20 Cal. 4th at 187. As such, a party asserting a UCL claim must "establish a loss or deprivation of money or property sufficient to qualify as injury in fact ... that ... was the result of ... the unfair business practice or false advertising that is the gravamen of the claim." *Sperling v. Stein Mart, Inc.*, 291 F. Supp. 3d 1076, 1087 (C.D. Cal. 2018) (citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011).

In the Complaint, True Grit alleges that "ECT is engaged in the business practice of alleging patent infringement it knows to [be] baseless;" and that ECT's practice is unfair because of "fraudulent statements made to the USPTO and the fraudulent statements made to consumers in the marketplace". (See Dkt. No. 33 at ¶¶ 103-104). As previously discussed, however, ECT's allegations of infringement were supported by the specification; and as such, were not objectively or subjectively baseless; nor asserted in bad faith. *See Dominant Semiconductors Sdn. Bhd.*, 524 F.3d at 1260 ("To be objectively baseless, the infringement allegations must be such that "no reasonable litigant could reasonably expect success on the merits.") Furthermore, since the inventor complied with his duty of disclosure to the USPTO by filing the corresponding information disclosure statements it cannot be reasonably inferred that he procured the '261 Patent in bad faith. Moreover, the allegation that the inventor purportedly failed to disclose Hancock and Foladare is not sufficient to establish inequitable conduct because the claims of '261 Patent

includes limitations that are not disclosed by those references; and therefore, are not material to the patentability of the '261 Patent.

Lastly, True Grit indicates ECT's enforcement letters include false statements (as set forth in paragraph 74 of the FAC) that also caused it to suffer certain monetary losses. (See Dkt. No. 33 at ¶ 107). ECT disagrees with True Grit that those statements are false. But in any event, the FAC fails to show how the receipt of one letter from ECT caused it to lose the amounts alleged in the same. As such, the FAC does not contain "factual content that allows the court to draw the reasonable inference that [ECT] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In sum, True Grit failed to state a claim for unfair business practices under the UCL because it failed to allege how ECT's purported violations of the UCL caused it to suffer an injury and lose money or property as a result of ECT's purported unfair business practice. Specifically, True Grit failed to allege how the receipt of one letter from ECT asserting the potential infringement of the '261 Patent caused any economic harm to True Grit. Even under the most generous reading of the pleadings, the fact is that True Grit suffered no harm. As such, True Grit does not sufficiently allege standing under California's Unfair Competition Law. *See Kemp*, 2017 WL 4805567, at *15.

In view of the foregoing, the allegations in the FAC do not allow the Court to draw the reasonable inference that True Grit "establish[ed] a loss or deprivation

of money or property sufficient to qualify as injury in fact ... that ... was the result of ... [ECT's purported] unfair business practice..." As such, Count 2 of the Complaint must be dismissed with prejudice under Rule 12(b)(6).

## IV.   CONCLUSION

In view of the foregoing, Counts 1 and 2 of the FAC should be dismissed for failure to state a claim under Rule 12(b)(6). In particular, Count 1 fails to state a cause of action because the allegations in the FAC do not allow the Court to draw the reasonable inference that ECT violated Section 5 of the FTC Act or that it engaged in inequitable conduct. Similarly, Count 2 fails to state a cause of action because the allegations in the FAC do not allow the Court to draw the reasonable inference that ECT engaged in an unfair business practice under the UCL. For this reason, ECT moves this Court to dismiss the FAC with prejudice as to counts 1 and 2.

DATED:  January 9, 2019

Respectfully submitted,

**FERRAIUOLI, LLC**

By:/s/ Jean G Vidal Font
JEAN G. VIDAL FONT
State Bar No. 266475
jvidal@ferraiuoli.com
221 Ponce de León
5th Floor
San Juan, PR 00917
Telephone: 787-766-7000
Facsimile: 787-766-7001

**Attorneys for Defendant**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on January 9, 2019 upon the following counsel of record by electronic mail delivery by way of the Court's ECF System to the addresses below:

Rachael D. Lamkin   RDL@LamkinIPDefense.com

DATED:  January 9, 2018

By:  /s/ *Jean G. Vidal*
Jean G. Vidal
Attorneys for Defendant