# SETTLEMENT AGREEMENT

This Settlement and License Agreement (the "Settlement Agreement" or "Agreement") is made and entered into by and between Electronic Communications Technology LLC (hereinafter "ECT"), on the one hand, and True Grit Studio Illustration and Design, LLC. ("True Grit"), on the other hand. ECT and True Grit are referred to herein collectively as the "Parties" and each one as a "Party."

## I. Recitals

WHEREAS, True Grit filed suit against ECT for Declaratory Judgment seeking declaratory relief under the Patent Act (the "Patent Claims") and the Unfair Competition Law of the State of California (the "UCL Claims") in response to a certain demand letter sent by ECT to True Grit;

WHEREAS, ECT and True Grit have agreed to settle their dispute solely as to the UCL Claims;

WHEREAS True Grit sought, as part of its UCL Claims, an injunction, enjoining ECT's patent enforcement activities in the state of California.

NOW, THEREFORE, for good and valuable consideration, including, without limitation, the releases and mutual promises contained herein, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## II. Effective Date

The Parties represent and warrant that they have signed this Settlement Agreement on the date set forth opposite their signatures. This Settlement Agreement is entered into and is effective as of the date that the last Party executes it (the "Effective Date").

## III. Definitions

1. Intellectual Property: Intellectual Property shall mean all patent, trademark, and/or copyright rights owned by ECT as of the Effective Date, including all patents in the same family as the Patent-In-Suit in this Action.
2. Action: The Action shall mean the present civil action, filed in the U.S. District Court for the District of California, captioned, *Kindred Studio Illustration and Design, LLC v. Electronic Communications Technologies, LLC*, Civ. No. 18-07661-GJS.
3. Excluded Actions: An Excluded Action is any litigation against a California Entity (as defined below) that was filed by ECT prior to the Effective Date. For clarity, and without limiting this definition, the Excluded Actions include the civil action, filed in the U.S. District Court for the Southern District of Florida, captioned *Electronic Communications Technologies, LLC v. Minted LLC*. Civ. No. 9:16-cv-81669.
4. California Entity: A California Entity shall mean any Third Party who is either incorporated in the State of California, or who maintains a principal place of business within the State of California. For the purposes of this definition and Settlement Agreement, a corporation that is incorporated in a state other than the State of California, and who maintains a principal place of business outside of the State of California, shall not be a California Entity if said corporation has offices in the State of California, or if said corporation's subsidiaries, affiliates, and/or parent company would be, by themselves, a California Entity.
5. Person: Person shall mean any natural person, firm, sole proprietorship, corporation, partnership, joint venture, trust, association, incorporated organization, limited liability company, government agency, or any other form of business or legal entity.
6. Third Party: Third Party shall mean any Person that is not a Party to this Settlement Agreement.

### IV. Terms

1. **No Admissions of Liability**

The Parties understand and agree that neither the making of this Settlement Agreement nor the performance of any acts hereunder or pursuant hereto shall constitute, be construed, or alleged as an admission of any liability whatsoever or as an admission of any wrongdoing whatsoever by any Party hereto.

2. **Ownership of Entities, Patents and Claims**

    (a) ECT represents and warrants that in the event ECT exclusively licenses, sells, assigns, or transfers any right, title or other interest in any of the Intellectual Property, or any portion of the Intellectual Property, such exclusive license, sale, assignment or transfer shall be subject to the releases, covenants and licenses granted in this Settlement Agreement.

    (b) ECT represents and warrants as of the Effective Date that: (i) it and its respective Affiliates have the right to grant releases and covenants of the full scope set forth herein; and (ii) the Person executing this Agreement on behalf of such ECT has the full right and authority to enter into this Agreement on ECT's and its Affiliates' behalf.

3. **Payment by ECT**

    Within Forty-Five (45) days of the Effective Date, ECT shall pay True Grit the total collective sum of Three Thousand Dollars ($3,000.00; the "Settlement Payment") in U.S. currency, by check to: Lamkin IP Defense.

    All taxes shall be the financial responsibility of the Party obligated to pay such taxes as determined by the applicable law and neither Party is or shall be liable at any time for any of the other Party's taxes incurred in connection with or related to amounts paid under this Settlement Agreement. ECT will not withhold any tax amounts from the Settlement Payment and will pay the full Settlement Payment to True Grit in accordance with the above terms.

4. **Voluntary Injunction: Non-Assertion against California Entities**

    ECT shall not, from the Effective Date onward, assert or enforce, through litigation or through correspondence, any Intellectual Property against any California Entity, provided that this non-assertion agreement will not apply to the Excluded Actions or to a Third Party who is not a California Entity despite the fact that its parent company or affiliate(s), by themselves, are a California Entity.

    If ECT breaches this Section, and asserts or enforces its Intellectual Property against a California Entity, then ECT agrees to: (i) immediately cease and withdraw any enforcement action against said California Entity; (ii) pay to the charity of True Grit's choice an amount equal to $100,000 dollars as liquidated damages (except not the Electronic Frontier Foundation); and (iii) pay any attorney fees incurred by said California Entity in responding to ECT's enforcement or assertion.

5. **Verification**

**In order to assure that ECT complies with its Voluntary Injunction, ECT will send to Lamkin IP Defense yearly statements, within thirty (30) days of the annual anniversary of the Effective Date, representing that: (i) it has reviewed all enforcement or assertion actions carried out by ECT during that year, and that it has taken reasonable steps to verify the headquarter and state of incorporation of any entity to whom ECT has enforced or asserted against; and (ii) that it has not received any revenue from any California Entity deriving from the enforcement or assertion of the Intellectual Property.**

**This information must be treated as Highly Confidential by Lamkin IP Defense and is to be used only for the limited purpose of assuring compliance with this Agreement.**

**6.   Dismissal of Action**

Within five (5) days following the Effective Date, the Parties shall instruct their respective counsels to file a Joint Stipulation of Dismissal, to dismiss the UCL Claims with prejudice, with each party to bear their own attorney fees, and costs, related to the UCL Claims. For the sake of clarity, the Joint Stipulation of Dismissal will dismiss all causes of actions set forth in the First Amended Complaint.

The Patent Law Claims shall not be the subject of the Joint Stipulation of Dismissal, and the dismissal shall not, in any way, be construed as a waiver of True Grit's Motion for Fees and ECT's respective opposition. The Parties shall continue to brief their respective position on the Motion for Fees independently of this Settlement Agreement.

**7.   Governing Law**

This Settlement Agreement shall be construed under the laws of the United States and the State of California (without reference to its choice of law statutes or precedents).

**8.   Choice of Venue and Jurisdiction**

The Parties will ask the current Court to oversee enforcement of this Agreement.  As such, any action arising under or relating to this Settlement Agreement shall be venued exclusively in the state or the federal courts of the Central District of California. Each Party expressly and irrevocably consents and submits to the jurisdiction of the courts in the Central District of California having appropriate subject matter jurisdiction in connection with any such legal proceeding.

**9.   Confidentiality of Terms**

(a) The Parties hereto agree that the terms of this Settlement Agreement are confidential and shall not be disclosed to any third party by any Party without the advance written permission of the other Party or a duly authorized representative thereof; provided, however, that a Party may confidentially disclose term(s) of this Settlement Agreement (i) to such Party's financial advisors (including its auditors and accountants), legal and licensing advisors, or insurers, (ii) by subpoena or other compulsory provision of law or a court order provided the disclosure can be made subject to a protective order under an "Outside Attorney's Eyes Only" or higher confidentiality designation, (iii) as necessary during the course of litigation and subject to a protective order under an "Outside Attorney's Eyes Only" or higher confidentiality designation, (iv) as it is reasonably necessary to enforce the terms of this Settlement Agreement, and (v) in administrative or regulatory filings if such disclosure is required by the Party's normal and customary reporting requirements.

    In addition, ECT, at its option, may disclose this Settlement Agreement and its terms to any actual or prospective beneficiary of the licenses, releases, or covenants contained herein or to any actual or potential purchaser of the ECT, its Affiliates or any of their assets to which this Settlement Agreement related who is bound in writing by an obligation of confidentiality.

    No Party shall use a press release or make a statement to the press relating to the Settlement Agreement without the written consent of the other Parties.

(b) Except as authorized in this Section, no Party shall make any representations or characterizations regarding the Settlement Agreement (except to confirm that the Action has been resolved), either publicly or to any non-Party, beyond the information available as part of the publicly available Court docket for the Action unless information about this Settlement Agreement comes into the public domain through no fault of the Party seeking to make such representation or characterization or otherwise required by law.

(c) If True Grit divulges the content of this Settlement Agreement, in any way other than those specific instances provided for in this Section IV.8(a), then ECT shall be immediately freed of all of its obligations under this Settlement Agreement.

## 10. Binding Effect and Benefit

This Settlement Agreement shall be binding upon and shall inure to the benefit of True Grit and ECT, as well as upon and to any and all of their respective successors or assignees.

## 11. Assignment of the Intellectual Property

ECT may assign, sell or otherwise transfer any of the Intellectual Property to any assignee, purchaser or other transferee that agrees to be bound by the terms, conditions, restrictions, definitions, and obligations of ECT as set forth in this Settlement Agreement.

## 12. No Modification Except by Writing

This Settlement Agreement may not be amended, modified, or altered except by a writing executed by each existing Party hereto.

## 13. No Representations or Warranties Except as Set Forth Herein

In entering into this Settlement Agreement, neither True Grit nor the ECT have made any representations or warranties, and True Grit and ECT have not relied upon any representations or warranties, other than those representations or warranties expressly stated and identified in this Settlement Agreement.  Except as not permitted by applicable law or otherwise agreed to in writing, each of True Grit, ECT, and their respective permitted successors, and assigns, acknowledges, accepts, represents, warrants and covenants that no individual person shall ever for any reason have any liability or obligations, personal or otherwise, for or with respect to any matter, prior to or following the Effective Date, relating to or arising solely from this Settlement Agreement.

## 14. Construction

This Settlement Agreement has been entered into after negotiation and review of its terms and conditions by Parties with substantially equal bargaining power, each of whom has had full and fair opportunity to consult with counsel, and is under no compulsion to execute and deliver a

disadvantageous agreement. This Settlement Agreement incorporates provisions, comments and suggestions proposed by all Parties, and shall be deemed to have been drafted by all Parties. No ambiguity or omission in this Settlement Agreement shall be construed or resolved against any Party on the ground that this Settlement Agreement or any of its provisions was drafted or proposed by that Party. The language of this Settlement Agreement shall be construed as a whole according to its fair meaning and not for or against any Party hereto. Descriptive headings and titles used in this Settlement Agreement are inserted for convenience of reference only and do not constitute a part of and shall not be utilized in interpreting this Settlement Agreement.

### 15. Waiver

Without waiving the applicable statutes of limitations, the Parties understand and agree that no forbearance by any Party to enforce any provisions hereof or any rights existing hereunder shall constitute a waiver of such provisions or rights, or be deemed to effect an amendment or modification of this Settlement Agreement.

### 16. Integration

This Settlement Agreement contains the entire agreement by and between True Grit and ECT regarding the subject matter hereof, and supersedes and cancels all previous communications, oral or written, between them concerning its subject matter.

### 17. Severability

If any provision of this Settlement Agreement is held invalid or unenforceable for any reason, such provision is fully separable, and shall thereupon be separated from the remaining provision of this Settlement Agreement, and the remaining provisions are nevertheless validated and enforceable as if such of the provisions held invalid or unenforceable were not part of this Settlement Agreement.

### 18. Counterparts, Fax and Electronic Signatures

This Settlement Agreement may be executed in counterparts with the same effect as if all parties hereto had signed the same document. All such counterparts shall be construed together and shall constitute a single agreement. Fax and electronic copies of signatures shall have the same effect as originals.

### 19. Authorization, Power

Each Party represents and warrants that it has the full power and authority to execute and deliver this Settlement Agreement and to perform its obligations hereunder. This Agreement constitutes a valid and legally binding obligation on each Party, enforceable in accordance with its terms as applicable. The execution, delivery, and performance of this Settlement Agreement have been duly authorized by each Party.

### 20. Safe Harbor

Except for a breach of Section IV.4 (Non-Assertion) and/or Section IV.8 (Confidentiality), in the case of breach of this Settlement Agreement by either Party, such a breach shall not be considered a breach of this Settlement Agreement if (a) the allegedly breaching Party is provided with written notice of the breach, and (b) the allegedly breaching Party cures the breach within ten (10) days of such written notice.

**Confidential Settlement Agreement**
Page 6 of 6

### 21. Notices

Any notice or other paper, document or communication required or which may be given hereunder shall be in writing and shall be delivered personally, or by facsimile, or sent by a prepaid "overnight" courier service (such as FedEx, DHL and UPS), and shall be deemed given and received when received by the addressee. Unless otherwise specified in writing by an officer or other authorized representative of the Parties, such notices or other communications shall be addressed to the persons at the addresses or associated contact information provided in the signature pages below. Any party may be given written notice of a change of address and, after notice of such change has been received, any notice or request shall thereafter be given to such party as above provided at such changed address.

### 22. Expenses

Except as otherwise expressly provided herein, all costs, fees, and expenses incurred in connection with this Agreement and the transactions contemplated herein shall be borne by the Party incurring such costs and expenses.

### 23. No Joint Venture

Nothing contained herein will be deemed to create any joint venture, partnership, agency, or employer-employee relationship between the Parties, and neither Party will have any right by virtue of this Agreement to bind the other Party in any manner whatsoever except as expressly provided herein.

### 24. Term

This Settlement Agreement is effective beginning on the Effective Date and shall remain in full force and effect until the expiration date of the last to expire of the Intellectual Property.

In **WITNESS WHEREOF,** the Parties have executed this Settlement Agreement through their duly authorized representatives as of the final date written below:

True Grit

Andrew Fairclough
c/o Rachael Lamkin
Lamkin IP Defense

With a copy to:

Rachael Lamkin
Lamkin IP Defense
RDL@LamkinIPDefense.com

Signature:

_____

Print Name:"
Cpf tgy "Fairclough

Title: Director

Date: 01/31/2019

_____

Notice to ECT per paragraph 20:

Peter A. Sirianni, III
Manager
Electronic Communication Technologies, LLC
711 SW 24th St.
Boynton Beach, FL 33435

Signature: _____

Print Name: Pete Sirianni

Title: MGR

Date: 01/02/19