UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KINDRED STUDIO ILLUSTRATION AND DESIGN, LLC (aka TRUE GRIT),<br><br>　　　　Plaintiff<br><br>　　v.<br><br>ELECTRONIC COMMUNICATION TECHNOLOGY, LLC,<br><br>　　　　Defendant. | Case No. 2:18-CV-07661 (GJS)<br><br>**MEMORANDUM AND ORDER** |

**INTRODUCTION**

The Court presently has before it the motion of declaratory judgment Plaintiff Kindred Studio Illustration and Design LLC (aka and hereafter "True Grit") seeking $79,800 in attorney fees. [Dkt. 37, "Motion."] True Grit asserts that this case is "exceptional" under 35 U.S.C. §285, pursuant to the standard enunciated by the Supreme Court in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545 (2014). True Grit contends that this case is exceptional in large part because: (1) the pre-filing legal position and behavior of Defendant and patent owner Electronic Communication Technology, LLC ("ECT"), which led True Grit to file this declaratory judgment action, were objectively unreasonable; and (2) ECT's litigation conduct in this case, and ECT's and its predecessor entities' litigation

conduct, amounted to nuisance value patent enforcement and was therefore unreasonable as well. The Court in large part agrees, and therefore holds that this case is exceptional under section 285. The Court awards True Grit attorney's fees in the slightly reduced amount of $72,000, as discussed further below.[1]

## FACTUAL BACKGROUND

### I. COMMUNICATIONS BETWEEN THE PARTIES AND THE PROCEDURAL HISTORY OF THE CASE

The parties have stipulated to a timeline of events [Dkt. 62-2 (Lamkin Decl., Ex. A)], material portions of which the Court summarizes as follows:

ECT initially contacted True Grit on August 11, 2018, via e-mail, referencing an "attached letter" and requesting that True Grit's "legal" contact ECT "to discuss an amicable resolve." The original e-mail did not contain the attachment, but by August 13, 2018, ECT sent True Grit a letter alleging infringement of its Patent No. 9,373,261 ("the '261 Patent"), offering "settlement for $12,000," and indicating it was open to a counteroffer for an "expedited resolve." On August 22, ECT wrote to True Grit to follow up on its demand, requesting that True Grit discuss the case by telephone.

Rather than respond to ECT's demand, on August 31, 2018, True Grit filed its declaratory judgment complaint in this action. [Dkt. 1, "Complaint."] True Grit's Complaint sought declarations that ECT's patent was invalid, not infringed by True Grit, and unenforceable due to inequitable conduct. In addition, the Complaint contained state law claims for unlawful competition pursuant to California Business and Professions Code section 17200, *et. seq.* True Grit's allegations and supporting

---

[1] In making its determination and authoring this opinion, the Court has considered multiple rounds of briefing as well as various salvos of supplemental authority provided at nearly regular intervals by the parties. The Court heard oral argument on March 20, 2019 (at which time additional briefing was ordered). By May 2, 2019, the Motion was fully submitted.

2

evidence will be discussed, as necessary, below.

On September 13, 2018, the case was deemed related to an earlier-filed case involving a patent from the same family as the '261 Patent (*Eclipse IP LLC v. PayByPhone Tech., Inc.*, Case No. 2:14-cv-154-GW (AJWx)) and was transferred to the docket of United States District Judge George H. Wu, who had presided over the prior litigation. In fact, there are nearly two dozen related cases that were filed in this district, primarily in 2014 and 2015, that were assigned to Judge Wu. Although the Court has not reviewed the complaints and dockets in each of these cases, it is the Court's understanding that all of the related cases concerned patents issued from the same original specification as the '261 Patent at issue here.

One such case was *Eclipse IP LLC v. McKinley Equipment Corporation*, 2014 WL 4407592, No. SACV 14-742-GX (AJWx) (C.D. Cal. Sep. 4, 2014). In *McKinley*, Judge Wu held that the claims asserted in that case were invalid under Section 101, *i.e.*, they were not directed to patentable subject matter. *Id.,* at *6 *et. seq.* (Section B. "The Asserted Claims of the Patents-in-Suit Fail §101"). True Grit asserts that the patent and claim which ECT accused True Grit of infringing in its 2018 correspondence is indistinguishable from the claims held invalid by Judge Wu for purposes of a Section 101 analysis, because all of the claims were based on the exact same specification. Although the patent-in-suit here issued after Judge Wu's decision in *McKinley*, True Grit argues that it issued only because the '261 Patent was examined by a different patent examiner and ECT did not properly cite Judge Wu's opinion invalidating a family-member patent to the examiner.

On October 2, 2018 – soon after the case at bar was transferred to Judge Wu, and little more than a month after this case was filed – counsel for ECT wrote to counsel for True Grit with the following offer: "Our client has authorized us to make an offer to your client to settle this matter. To those effects, we can give your client a CNS [Covenant Not to Sue] in exchange for a dismissal with prejudice, with each side to bear their own fees." On October 8, 2018, True Grit declined the offer,

countering that it would dismiss its case if ECT paid True Grit's costs and attorney's fees. ECT declined to pay True Grit's attorney's fees, but sent a CNS to True Grit on October 22, stating that the CNS "moots all controversies between ECT and [True Grit] as it relates to infringement" and, further, that True Grit's remaining claims were state court claims only. ECT requested that True Grit dismiss the instant Complaint in light of the CNS. Because it had incurred fees and costs, True Grit declined at that time.[2]

What followed was ECT's motion to dismiss and related briefing, concurrent with settlement negotiations by the parties. In the motion practice, True Grit argued that the CNS provided by ECT was not broad enough to cover all contingencies, so that it did not divest the Court of jurisdiction over any of the patent claims. ECT argued that it was, and that True Grit's state law Section 17200 claims were not viable either. In their concurrent negotiations, the parties had agreed, by December 2, 2018, to wording of a mutually agreeable CNS. The next day, Judge Wu held a hearing on ECT's motion to dismiss, issuing a tentative ruling dismissing all of True Grit's claims, including its state law unfair competition claims, *without prejudice*, but urging the parties to stipulate to a basis for dismissal of the patent claims to be with prejudice. [Dkt. 29.] Judge Wu's ruling rested, in part, on his finding that the CNS ECT gave True Grit was in fact broad enough.

Using the language to which they had agreed on December 2, the parties filed a joint stipulation dismissing all of True Grit's patent claims (including its invalidity and inequitable conduct claims) *with prejudice* two days later. [Dkt. 30]. Judge

---

[2] While in most cases, the granting of a covenant not to sue will also eliminate jurisdiction over any issues of patent invalidity or unenforceability as well as infringement, *Dow Jones & Company, Inc. v. Ablaise LTD*, 606 F.3d 1338 (Fed. Cir. 2010), where those issues are part of a separate claim, they may survive. Here, True Grit's state law unfair business practices claims likely implicated those issues, as True Grit argued that ECT was wielding a patent it knew to be invalid and unenforceable in seeking nuisance value settlements with California resident companies.

Wu's ruling permitted True Grit to file an amended complaint on the remaining claims by no later than December 24, 2018. [Dkt. 29.]

The First Amended Complaint [Dkt. 33, "FAC"] was filed on December 24, 2018. The parties thereafter filed consents to proceed before the undersigned Magistrate Judge. [Dkts. 40 and 44.] They settled the remaining state law claims (after agreeing to stay the proceedings pending settlement to minimize further expenditure of resources) and filed a joint stipulation to dismiss the FAC with prejudice on February 1, 2019. At that point, the only remaining issue to be decided, per agreement of the parties, was whether exceptional case fees are appropriate here. The briefing and argument related to this Motion are now complete. [Dkts. 37, 42, 48, 57, 58, 61, 62, 63, and 65.]

## II. ECT'S PATENT AND INFRINGEMENT CONTENTIONS

The '261 Patent, entitled "Secure Notification Messaging With User Option To Communicate With Delivery Or Pickup Representative," was issued on June 21, 2016. The '261 Patent is a multi-generation divisional of a multi-generation continuation of an application that was filed in November 2003. That is to say that the specification of the issued '261 Patent is the same as the specification of the original patent application to which the '261 Patent claims priority, and which was the ultimate parent application resulted, eventually, in a large family of issued patents. [Dkt. 1-2.] The "Field of Invention" "generally relates to data communications," but "more particularly, to systems and methods that notify a party of travel status associated with one or more mobile things (MTs)." [Dkt. 1-2, col. 1, ll. 47-51.] Under the heading of "Related Art," the '261 Patent's specification notes that "at least for the purposes of allowing better preparation and scheduling, for example, with respect to pickup or delivery of a good or service, it would be desirable to know, with substantial accuracy, the expected arrival or departure time of a mobile thing (MT) (for example but not limited to, a bus, automobile, truck, train, ship, plane, aircraft, etc.) and with respect to a stop location for the pickup or

delivery." [Dkt. 1-2 (Original Complaint, Ex. 2), col. 1, ll. 53-59.]

On August 10, 2018, ECT – after previously sending a generic e-mail to "corporate" – sent a letter to Andrew Fairclough, Founder of True Grit Texture Supply, threatening litigation if True Grit did not license ECT's patent for a lump sum of $15,000. "ECT's proposed license fee, of course, is subject to early discussions and good faith communications toward a patent license. If litigation is required to enforce ECT's rights, the upfront license offer is obviously removed." [Dkt. 1-3; 33-2 (FAC).] The August 10 letter attached an infringement chart, accusing True Grit of practicing Claim 11 of the '261 Patent. The Court will not set forth all of the examples that demonstrate that Claim 11 (and the '261 Patent generally) are directed toward tracking the physical location of an "MT," or "mobile thing," and that demonstrate that the claim requires "delivery or pickup of a good or service at a stop location by a mobile thing (MT)", but a few such instances within the Claim language are included below. According to ECT's infringement allegations, Claim 11 requires "code that" does the following (in summary, unless indicated in quotation marks):

  a. Enables a first party to use authentication data for use in connection with . . . "advance notification of a delivery or pickup of a good or service at a stop location by a mobile thing (MT)";
  b. "monitors location or travel information in connection with the MT"; and
  c. causes initiation of a session . . . "in advance of the arrival of the MT at the stop location, based at least in part upon the location or travel information associated with the MT."

[Dkt. 33-2 at 8-9.]

ECT's claim chart asserts that True Grit practices each element of Claim 11, in part by stating that True Grit uses e-mail and electronic data communication systems "when products are designated for shipment, pulled from inventory, at fulfillment, at loading areas, picked up by couriers, and before delivery at a customer's address,

and before the shipment arrives at the delivery address." [Dkt. 33-2 at 9.] The infringement chart also includes a "snip" of a screen shot of True Grit's website showing "customer information," with an example billing address set forth, and another "snip" that shows a "view your order" button. [Dkt. 33-2 at 8-9.]

The problems with both ECT's '261 Patent and its accusations of infringement against True Grit are – and were at the time the demand letter was sent to True Grit – many and serious. As noted above, well before August 2018, when ECT sought a nuisance value flat fee license amount from True Grit, the District Judge Wu had held all of the asserted claims in three patents from the same family as the '261 Patent – sharing exactly the same specification as the '261 Patent – patent ineligible. *Eclipse IP LLC v. McKinley Equip. Corp.*, 2014 WL 4407592, No. CV 14-154-GW (AJWx). The claims of the related patents did not cover eligible subject matter, because "the claims, read in light of the specification, were deliberately drafted to recite hardware only in the most generic sense." *Id*., at *7.

Claim 11 of the '261 Patent suffers from the same type of obvious defect, in that it recites only a "system" comprising "code" that runs on a general purpose computer to perform certain generic tasks, like "monitor[ing]", "caus[ing] initiation of" a communication session," or "enabling," a party to select whether to engage" in a communication session. [Dkt. 33-2 at 8-10 (quoting Claim 11 of '261 Patent).] For all intents and purposes, the claims recite hardware and code implemented on such hardware "only in the most generic sense." These types of claims are patent ineligible under the Supreme Court's decision in *Alice Corp. Pty. LTD., v. CLS Bank Int'l,* 134 S. Ct. 2347 (2014). Given both the *McKinley* case and the state of Section 101 law post-*Alice*, no reasonable patent litigant would have believed that Claim 11 of the '261 Patent was viable in August 2018.

ECT's allegations of infringement against True Grit are even worse. Put bluntly, it is apparent from True Grit's website ***that it does not sell a physical product capable of being shipped***. Rather, True Grit sells a digital download of a tool for

7

use by graphic designers so they can "texturize" a graphic image in a certain style developed by True Grit. [Dkt. 1, ¶¶9-12]. Although ECT's infringement contentions talk of "products . . . designated for shipment," that can be "pulled from inventory," or might exist at "loading areas" to be "picked up by couriers," and which can be tracked "before the shipment arrives at the delivery address," True Grit does not do *any* of this, and these facts are not in dispute. And that True Grit does not meet any of these claim elements is plain from its website. In what the Court can only find to be a bit of bad faith prestidigitation, ECT conveniently edited out all reference to the fact that True Grit's product was a digital download, including the download button on True Grit's website, in order to "demonstrate" infringement in its claim chart. [Dkt. 1-3 (ECT's claim chart) at 8.] ECT does not deny this allegation; rather, ECT argues that it did not include the obvious digital download button when it provided a snipped screenshot, because "no other part of the Support Page" on which the button was found "was needed to show the intended support for the infringement allegation." [Dkt. 42 (ECT's Opposition) at 21.] Whether the fact that True Grit's product was only provided digitally was "needed" to support an element of ECT's claim or not is not the issue. That this exculpatory evidence was plain to ECT before it accused True Grit of infringement *is* an issue.

As explained further below, ECT cannot explain away its bad behavior.

### III.   ECT'S, ITS PREDECESSOR'S, AND THE PATENT HOLDERS' LITIGATION HISTORY

ECT and its predecessor and related entities have a long history of nuisance value litigation, demands, and settlements. Many of the cases that made it to court – whether brought by ECT-related entities or declaratory judgment plaintiffs – have been filed in this District or Florida.

The listed inventor and prosecuting attorney on the '261 Patent is Scott A. Horstemeyer. According to the Florida Secretary of State, Peter Sirianni is the manager of ECT. [*See also* Dkt. 68-2 at 2, 5 (Eclipse to ECT name change

documentation submitted by Horstemeyer and signed by Sirianni).] While ECT is the assignee of the patent, the original applicant was its predecessor entity, Eclipse IP, LLC. [*Id.*] Between 2011 and 2015, Eclipse filed complaints against more than 150 defendants alleging infringement of the claims from patents in the family to which the patent-in-suit belongs before Eclipse changed its name to ECT. In 2017 and 2018, three declaratory judgment plaintiffs (in addition to True Grit) brought suit against ECT. The complaints in these actions attach generic nuisance value demand letters relating to the '261 patent (in the Northern District of Iowa, Northern District of Indiana, and the Southern District of Florida) that are similar to the demand letter sent by ECT to True Grit. [*See, e.g.*, Dkt. 68-3 (September 19, 2018 letter on behalf of ECT accusing Citylife USA of infringement).]

True Grit has presented evidence of (and the Court has taken judicial notice of dockets in other cases that demonstrates the existence of) yet another litigious entity seeking nuisance value patent "rents" that is helmed by many of the same individuals that control ECT. Shipping & Transit, LLC (f/k/a ArrivalStar and Melvino Technologies) filed over 500 lawsuits, including at least 100 in 2016 alone. ECT and Shipping & Transit share a manager (Sirianni), licensing agent (Edward Turnbull), and prosecuting attorney (Horstemeyer). Additionally, the inventor on the Shipping & Transit patents (Martin Kelly Jones) is listed as a joint owner of the ECT-owned patents in the patents' file history. [Dkts. 62-3, 62-4, 62-5 (Exs. B, C, and D to Lamkin Decl. ISO Plaintiff's Supplemental Fees Brief); Dkt. 68-1, ¶5.] ECT does not seriously contend that it is unrelated to these other persons and entities, although it argues that True Grit has provided insufficient evidence of any connection. Notably, ECT does not actually address any of the evidence that True Grit *did* provide (which is substantial). Nor does ECT affirmatively state – in the Court's view, because it cannot while remaining in compliance with Rule 11 and ethical rules – that the same group of people do not control the actions of each of these rent-seeking shell holding companies.

9

After extracting nuisance value rents in many filed cases – and more than likely additional pre-litigation demand situations – Shipping & Transit finally stopped sending demand letters and filing lawsuits after several federal courts, including one in this District, awarded section 285 exceptional case fees to the victims of its licensing campaign.  *See, e.g., Shipping & Transit, LLC v. Hall Enterprises, Inc.*, Case No. 2:16-cv-06535-AG (AFM) (C.D. Cal., November 28, 2017) (awarding $91,000 in attorney's fees to defendant Hall Enterprises); *Shipping & Transit, LLC v. 1A Auto, Inc.*, 283 F. Supp. 3d 1290, 1299 (S.D. Fla. 2017); *Shipping & Transit, LLC v. LensDiscounters.com*, No. 9:16:-cv-80980, 2017 WL 5300068 (S.D. Fla. Aug. 10, 2017).  Thereafter, Shipping & Transit – a shell company without assets other than the IP it asserted as part of its licensing strategy – filed for bankruptcy in an apparent bid to avoid paying attorney's fees or other sanctions.  [See Dkt. 62-1 (Ex. 4) (bankruptcy petition, stating that Shipping & Transit's gross revenue from 2016 and 2017 was more than $1,000,000; its total assets were valued at only $2.00; and showing a long list of unsecured creditors including 1A Auto and other entities that secured fee awards).]

According to True Grit and not contested by ECT, none of the actions brought by ECT in any of its incarnations has gone to trial.  In fact, none of the them have proceeded past claim construction.  As set forth in True Grit's opening brief, ECT's prosecuting attorney (and the named inventor here) was able to obtain 28 patents based on the specification of the original application by filing divisional and continuation applications, and ECT has asserted 27 of those patents a total of 875 times, without ECT (or a related entity) ever taking a single case to a merits determination.  [Dkt. 37 at 8-10.]  As noted above, ECT does not seriously contest this accounting or present evidence that its principals and agents are not the same persons involved with both the Eclipse and Shipping & Transit entities.  ECT did, when its opposition to the Motion was first filed, contend that two cases where ECT was plaintiff asserting the '261 Patent remained open – implying it was continuing

to press the validity of its patent and infringement claims in those cases [Dkt. 42 at 15] – but it has since withdrawn that part of its brief, since judgments were entered for the defendants in those cases soon thereafter. [Dkt. 42 at 15-16 (noting pending cases); Dkt. 48 (informing Court of dismissal of those cases).]

## GOVERNING STANDARD

The Court in "exceptional cases may award reasonable attorney fees to the prevailing party" in a patent case. 35 U.S.C. § 285. As the Supreme Court set forth in *Octane Fitness* a few years ago, an exceptional case is one that, under the totality of the circumstances, "stands out from others with respect to the substantive strength of a party's litigation position" or "the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 554 (2014). District Courts consider whether a case is "exceptional" on a case-by-case basis, "considering the totality of the circumstances." *Id.* at 554. "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* at 555. The Supreme Court also recognized "the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 558, n.6 (internal quotation omitted). A party seeking exceptional case fees must prove it is entitled to such fees by a preponderance of the evidence. *Id.* at 557. Very recently, in *Thermolife International LLC, et. al, v. GNC Corporation,* the Federal Circuit in a pair of consolidated appeals of defendant-appellants *High-Tech Pharm., Inc. and Vital Pharm., Inc.*, reiterated this standard and also noted that "[a] district court must 'provide a concise but clear explanation of its reasons for [a] fee award.'" *Thermolife,* __ F.3d __, Case Nos. 2018-1657, 2018-1666, 2019 WL 1925696, at *6, (Fed. Cir. May 1, 2019) (quoting *Hensley v. Echerhart*, 461 U.S. 424, 437 (1983) (additional citations omitted)).

# DISCUSSION

When a party provides a CNS to a declaratory judgment plaintiff and seeks to dismiss all patent claims, the plaintiff is the prevailing party for purposes of awarding costs and attorney fees. *Highway Equip. Co. v. FECO Ltd.,* 469 F.3d 1027, 1035 (Fed. Cir. 2006) (CNS coupled with voluntary dismissal with prejudice renders dismissed party the prevailing party). ECT does not contest that True Grit is the prevailing party on the patent claims but argues that this case is not exceptional. [Dkt. 42 at 12.] True Grit, on the other hand, seeks fees for all the patent-related work it has done on this case, beginning with drafting its declaratory judgment complaint and ending with the fees incurred in seeking exceptional case fees through this Motion. True Grit bases its requests for fees on: "(1) ECT's predatory litigation conduct; (2) the deep disparity in litigation strength among the Parties; (3) ECT appears to have doctored its infringement allegations to hide actual conclusive evidence of non-infringement; (4) no reasonable party could have continued to assert the '261 Patent after *McKinley*; and (5) the necessity of deterrence." [Dkt. 37 at 8.] These five bases really amount to two categories of alleged bad conduct making the case exceptional in True Grit's view: conduct related to the instant litigation, covering both pre- and post-filing communications and conduct between the parties; and conduct by ECT in both its present and previous incarnations (or by closely related entities) that is both unreasonable and to be deterred. The Court will address these categories in turn.

## I. Relationship Of The Parties

### A. ECT's Infringement Contentions Were Objectively Unreasonable

True Grit contends that ECT's demand letter to its principal was part form letter, because the original e-mail was clearly generic, and part fraud, because intentional manipulation of screenshots of True Grit's website was required to present any semblance of a colorable contention of infringement. With or without the manipulated claim chart, though, True Grit argues that no reasonable patentee or

attorney could possibly conclude that sales of True Grit's download-only product infringe the '261 Patent. True Grit thus brought its declaratory judgment action and now seeks the attorney's fees it incurred in doing so, including all fees incurred post-filing, through the final dismissal with prejudice of its claims.

ECT makes several arguments in response. First, ECT contends that if True Grit had simply responded to its initial demand and negotiated with ECT, True Grit would have explained its non-infringement position to ECT, which then would have given True Grit the same CNS it now enjoys. So, in ECT's view, it's True Grit's fault in incurred attorney's fees. Relatedly, ECT contends that the infringement allegations it sent to True Grit were not "final." It might have come up with better infringement arguments – ones that the Court would not find completely meritless – if True Grit had spent time negotiating. ECT further contends that, if exceptional cases fees are based solely on the parties' *litigation* conduct, defined by ECT to mean everything that that happened after the declaratory judgment complaint was filed, as ECT contends, then it has not done anything but win in this case. It granted a CNS to True Grit and won its motion to dismiss (without prejudice) all counts in the complaint, state and federal. In sum, ECT essentially argues that True Grit "churned" this case, unnecessarily spending money on attorney's fees, and it should have either negotiated with ECT or sat back and waited to see what might happen. The Court does not find ECT's logic persuasive.

As an initial matter, after being sent a demand and threatened with litigation (ECT's letter notes that its demand will go up if it is forced to litigate), True Grit had every right to bring a declaratory judgment action in any proper venue of its choice. It was not required to wait and see whether and where ECT would sue. ECT cites no cases in support of its "wait and see" theory. That True Grit was entitled to file its declaratory judgment action immediately upon receipt of ECT's demand letter is "Jurisdiction and Venue 101." ECT does not really contend otherwise.

ECT does contend, however, (1) that it should not be "punished" based solely on pre-filing conduct; (2) and, that even if pre-filing conduct is a sufficient basis upon which to make a finding that this is an exceptional case, the amount of fees to which True Grit is entitled should be cut off as of the time it granted the CNS to True Grit. Both halves of ECT's argument are flawed.

The Federal Circuit has found in at least one case that an award of fees was appropriate based almost exclusively on pre-filing conduct. In *Thermolife*, the Federal Circuit upheld an award of attorney's fees when the District Court based its decision, in part, on its finding that the patentee had conducted an inadequate pre-filing investigation before accusing the defendants of infringement. 2019 WL 1925696, at *8 (upholding district court's award of section 285 fees when "plaintiffs failed to undertake an adequate prefiling investigation"). The situation here is even more egregious, because ECT did not fail to investigate; rather, it doctored what evidence it did find on True Grit's website in order to manufacture its claim chart. ECT does not deny that it failed to include the "download now" button/graphic that appears on the same page – in fact, very close to – portions of True Grit's page on which it relies in its attempt to demonstrate infringement. Rather, ECT argues that it only included what it needed to support its infringement claim, and was entitled to ignore the parts of True Grit's website that irrefutably showed True Grit did not and could not infringe by sales of its digital graphics tool. Courts do not condone this type of behavior.

As noted previously, ECT also argues that it should not be held to a pre-filing investigation standard because, at the time it send the demand letter and infringement chart to True Grit, the chart might not have been final. ECT could have (and has since tried to) come up with a colorable contention of actual infringement. [Dkt. 65 (ECT's Opp. to Supplemental Brief) at 13-14.] ECT's argument is entirely without merit and not really credible. ECT never intended to litigate this case. It never intended a more fulsome investigation. It intended only

14

to engage in a quick "smash and grab," using a misleading infringement chart against a small company in hopes of getting a quick settlement. Moreover, its new infringement theory fares no better than its last.

The Court holds that exceptional case fees are appropriate on the basis of ECT's doctored claim chart and weak infringement position, coupled with its demand for a license fee that was obviously well below what it would cost to litigate a case, even without the additional factors discussed below.

The Court further finds that an award of fees is appropriate for patent-related case work through the dismissal with prejudice of the all patent claims. Although ECT did file and win its motion to dismiss, in part because Judge Wu found that the CNS is granted to True Grit was – as ECT argued – broad enough to cover any potential allegations of infringement (*e.g.*, True Grit's customers and any related entities were in no danger of facing a lawsuit), this finding did not end the patent case. True Grit's was entitled to continue pursuing its counterclaims for patent invalidity and unenforceability. Moreover, while Judge Wu ruled against True Grit on the CNS scope issue, True Grit's position was not frivolous. It was entitled to oppose ECT's motion to dismiss. True Grit requests $79,800 in fees. [Dkt. 67-2 at 2.] The Court has reviewed the detailed billing records provided by counsel, and finds that the patent related charges are reasonable. While counsel obviously intended to include only hours spent on patent-related work, there are two entries that appear to the Court to be related to the state law claims. [Dkt. 62-7 (Lamkin Decl. in support of Supplemental Fees Brief) at 7 (entries for 1/16/2018 [sic] and 1/17/2019, related to drafting opposition to motion to dismiss FAC, which contained only state law claims).] The Court thus has reduced the total amount requested by True Grit's counsel by 14.8 hours (at counsel's rate of $500 per hour). The total remaining is $72,400, which the Court finds reasonable.

### B. ECT – A Professional Licensing NPE – Had Much To Gain And Nothing To Lose When Threatening A Small Company Like True Grit

Licensing is a valid way to monetize intellectual property. When patents that are reasonably believed to be valid are asserted – before or in litigation – against entities that are reasonably thought to infringe, then the relative size or strength of the entities involved has limited relevance in assessing whether exceptional case fees are appropriate. But in a case such as this, where a non-practicing entity – an intellectual property holding company with no real assets – goes after a small, relatively unsophisticated company to strongarm a quick settlement, this factor weighs in favor of awarding section 285 fees. The Court is particularly disturbed by the history of one of ECT's related patent holding entities, Shipping & Transit, which declared bankruptcy to avoid paying attorney's fees and any other damages, listing the value of its intellectual property – the patents it had asserted to make hundreds of thousands of dollars, as two dollars. ECT here, like Shipping & Transit before it, held all the cards.

## II. ECT's History Of Abusive Litigation

### A. No Reasonable Patentee Would Assert The '261 Patent Given The Standard Set Forth In *Alice* And After Judge Wu's Decision In *McKinley*

True Grit contends that, given the history of the patents in the same family as the '261 Patent, and particularly in light of Judge Wu's decision in the *McKinley* case, no reasonable patentee would assert the '261 Patent against any alleged infringer. In opposition, ECT argues that, despite Judge Wu's findings and holdings in *McKinley* that the asserted claims in that case were patent ineligible, it was entitled to assert the '261 Patent against True Grit because that particular patent had not yet been invalidated, and issued patents are presumed valid. The presumption of validity, however, does not equate to a presumption of patent eligibility. *E.g., Cellspin Soft*

*v. Fitbit, Inc.*, No. 4:17-cv-5928-YGR, 2018 U.S. Dist. LEXIS 112873, at *10-11 (N.D. Cal. July 6, 2018) ("Although issued patents are presumed valid, they are not presumed eligible under Section 101.") (citing *Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d 709, 721 (Fed. Cir. 2014) (Mayer, J. concurring). And as set forth above, an analysis of the '261 Patent's claims compared to those family member claims invalidated in *McKinley* shows they suffer from the same defects that rendered the *McKinley* claims patent ineligible. The Court agrees with True Grit that no reasonable patentee would assert the '261 Patent claims against an alleged infringer after *McKinley*.

### B. ECT's Business Model – Leveraging The High Cost Of Actual Or Threatened Litigation To Extract Settlements – Should Be Deterred

Whether the Court considers only the litigation history of ECT (as both ECT and Eclipse IP) or the entire history of the entities that True Grit has demonstrated are related (including Shipping & Transit) the Court can discern a clear pattern of serial filings, and also several (and presumably many more) instances of threats of litigation, intended only to obtain quick settlements at a price much lower than the cost of litigation. As United States District Judge Andrew J. Guilford found in *Shipping & Transit, LLC v. Hall Enterprises, Inc.*, "[t]hese tactics present a compelling need for deterrence and to discourage exploitative litigation by patentees who have no intention of testing the merits of their claims." *Shipping & Transit, LLC v. Hall Enterprises, Inc*., No. CV 16-06535-AG-AFM, 2017 WL 3485782, 2017 U.S. Dist. LEXIS 109122, at *23 (C.D. Cal. July 5, 2017). *See also Eon-Net v. Flagstar Bancorp.,* 653 F.3d 1314, 1326-27 (Fed. Cir. 2011) (affirming district court's finding of "indicia of extortion" where plaintiff filed over 100 lawsuits, where "[e]ach complaint was followed by a demand for quick settlement at a price far lower than the cost of litigation . . . .") (citation omitted); *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs.*, 858 F.3d 1383 (Fed. Cir. 2017)

(reversing district court's decision declining to award exceptional case fees where court had failed to consider patent holder's nuisance value lawsuits against third parties).

This case is no different just because it involves a declaratory judgment action with the patentee as a defendant rather than where the patentee first files an infringement action before extracting nuisance value patent rents. ECT's immediate demand for a low value settlement, apparent willingness to reduce that amount to avoid any challenge to its patent, and immediate provision of a CNS to True Grit once the declaratory judgment action was filed demonstrate ECT's "*in terrorem*" tactics – threatening litigation in hopes of a quick settlement with no intention of ever testing either the strength of its patent or its allegations of infringement. Therefore, section 285 attorney fees are appropriate in this case for their deterrence value as well.

## DISPOSITION

For all of the foregoing reasons, the Court rules that True Grit is the prevailing party and is entitled to recover costs to the extent taxable under the Rules. True Grit is also entitled to recover reasonable attorney's fees under 35 U.S.C. § 285 in the amount of $72,400.

**IT IS SO ORDERED.**

DATED: May 23, 2019

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE